is conclusive as to the fact that there was a consideration to the deed. Grout v. Townsend, 2 Denio, 336; Murdock v. Gilchrist, supra. The consideration actually paid or promised may be shown to have been other than that recited in the instrument, or the fact of payment of the consideration agreed upon may be contradicted in an action for its recovery; but the existence of a sufficient consideration, when expressed in an instrument under seal, is not subject to dispute. The contract in question, although without mutuality in its covenants, was not void for want of consideration, and the defendant was not at liberty to rescind it during the time given for the exercise of the option by the parties of the second part or their assigns. The tender by the plaintiffs was sufficient in amount, as was admitted by the defendant, and the evidence shows that it was kept good in the manner proposed by the plaintiffs, and not objected to by the defendant, either at the time it was made or by his answer in this action or on the trial. Halpin v. Insurance Co., 118 N. Y. 165, 178, 23 N. E. Rep. 482. The conditions annexed to the tender seem to have been only those upon which the plaintiffs had a right to insist, and no objection was made to them at any time. See case last above, and cases cited at page 176, 118 N. Y., and page 485, 23 N. E. Rep.

The objection to equitable relief is plainly not tenable in this action. In the nature of the case there could be no assessment of damages for the failure to perform the covenant to convey the mining privileges, the value of which could only be ascertained by their actual exercise. We find no error in the disposition of the case by the learned referee, and the judgment entered upon his report should be affirmed. Judgment appealed from affirmed, with costs.

---

(70 Hun, 597; mem. report without opinion.)

### McGARRY v. CITY OF BUFFALO.

(Supreme Court, General Term, Fifth Department. June 23, 1893.)

NEW TRIAL—MISCONDUCT OF JUROR—RELATIONSHIP TO PARTY.

On a motion for a new trial by plaintiff in a case against a city, it appeared that plaintiff's attorney, at the time of impaneling the jury, asked if any of them had, or had had, business relations with any one connected with the city attorney's office, and that no juror made any reply, whereupon the attorney said he would take it for granted that no such relation existed. It further appeared that one juror kept a livery stable, and regularly furnished the law department with carriages, under the direction and patronage of the corporation counsel, and from affidavits made by such juror and a detective employed by the city it appeared that they understood the purpose of the question, and made no disclosure merely because the attorney mentioned in terms the city attorney, and not the corporation counsel. *Held*, that the question called for a frank disclosure of the juror's relation towards the law department, and a new trial should be granted.

Appeal from special term, Erie county.

Action by Peter McGarry against the city of Buffalo. From an order granting a new trial for improper conduct of a juror, after verdict for defendant, defendant appeals. Affirmed.

The opinion of Mr. Justice CHILDS, rendered at special term, is as follows:

Upon the trial of this action the jury rendered a verdict in favor of the defendant, and the plaintiff now moves upon the minutes of the court, also upon an affidavit and notice to the defendant, for a new trial—First, for the alleged misconduct of a juror; and, second, upon the ground that the verdict is against the evidence.

In support of the first ground the affidavit of the plaintiff's attorney has been read, from which it appears that at the time the jury was impaneled to try this case said attorney "asked the jurors if any of them had now, or ever had, any business relations with any one connected with the city attorney's office, either as client or otherwise. That no juror made any reply to such inquiry. That deponent then said: 'If any juror has had any such business relations of any kind, will you please let me know?' That no juror made any reply to such inquiry, and deponent then said to the jury he would take it for granted that none of them had any such relations with any one connected with the city attorney's office or corporation counsel unless they let him know to the contrary, and no juror made any reply to such statement." The affidavit of Charles S. Hatch, read by the plaintiff, shows that Michael Dirnberger, one of the jurors upon the trial of this action, keeps a livery stable in the city of Buffalo, and furnishes the law department with horses and carriages and general livery, under the patronage and direction of the corporation counsel. That such patronage is valuable, and amounts to several hundreds of dollars per year. That from an examination of the proceedings of the common council it appears that the bills paid to said Dirnberger were from $35 to 48.50 each, and that on the 15th day of February, 1892,—four days after the verdict was rendered in this action,—a bill of $42.50 was ordered paid to him. The defendant, in opposition to this motion, read the affidavits of said juror, Michael Dirnberger, of Frederick Russ, a detective in the office of the corporation counsel, and of others, to which it will not be necessary to refer at length in disposing of this motion. The juror Dirnberger, in his affidavit, states "that he remembers what occurred when the jurors were drawn; that he remembers the examination of the jurors by the plaintiff's attorney; that no questions were asked of individual jurors by said attorney; that what was asked was addressed generally to all the jurors; that in such examination by said attorney no reference was made to Corporation Counsel Browne or to the office; that said attorney asked the jurors if they were acquainted with the city attorney, Mr. Laing, and if they had any business relations with him; that all of the questions asked by said attorney referred to said Laing exclusively; that deponent has a distinct recollection of the examination by the plaintiff's attorney, because he expected that question would be asked by said attorney, which would require him to state that he had had business with the corporation counsel's office; that deponent also expected that questions would be asked regarding his acquaintanceship with the corporation counsel; that in all the other cases where deponent had been called as a juror during that term the attorneys had asked numerous questions of that kind, and deponent expected such questions would be asked in this case; that deponent was prepared to answer such questions to the effect that he was well acquainted with said Browne, and that he had done business with the corporation counsel's office, but no question was asked by the plaintiff's attorney which called for any such answer." It is further stated in said affidavit that the juror's acquaintance with the corporation counsel, and his business relations with that office, did not in any way affect him in the consideration of this case. Russ, the detective employed in the corporation counsel's office, in his affidavit, states "that plaintiff's counsel did not ask said Dirnberger or any of said jurors if he or any of them had now, or ever had, any business relations with any one connected with the city attorney's office, either as clients or otherwise; that said counsel asked the jurors if they were acquainted with the city attorney, Laing, and whether he had done any business for them of any kind; that the examination of the jurors was general,

and was very brief on the part of the plaintiff's counsel, and deponent has the positive recollection that there was no question asked by the plaintiff's counsel of the jurors as to whether they had any business relations with the corporation counsel's office, or any one in his office, excepting such Laing; that one reason why deponent is able to recall what occurred at that time is that he knew that said Dirnberger and one or two other jurors were acquainted with the corporation counsel Browne, and deponent expected that such questions would be asked by plaintiff's counsel." The remaining affidavits read by the defendant need not be referred to in disposing of the questions presented by the plaintiff. The affidavits of the plaintiff's attorney, the juror, and Russ, as quoted, present the facts from which it must be determined whether the plaintiff has had a trial of his case by such a jury as he was entitled to by law. The plaintiff was entitled to have his case passed upon by a jury no one of whom, from any interest in the subject-matter of the litigation, or from any connection with any adverse party to the action or the attorney of such a party, could justly be supposed to be influenced in any degree by such connection or interest against the plaintiff's cause. He was entitled to examine the jurors called to try his case for the purpose of ascertaining whether or not any juror so drawn was fairly disqualified under the rule as stated; and he was further, in case such examination did not disclose a bias calling upon the court to excuse the juror, entitled to his peremptory challenge, in case he believed, from such examination, that the relation of the juror might be unconsciously influenced to his prejudice.

The affidavits quoted show that the plaintiff, by his attorney, sought to exercise this right, and tend to show that he was deprived of its complete exercise by the failure of a juror to respond to a fair question calling for a disclosure of his relations with those engaged in promoting the interest of the defendant. The plain purpose of the plaintiff was to ascertain if any juror sustained such relations to the law department or officers of the defendant as would, in the opinion of counsel, make it improper for such juror to sit; and hence the inquiry, as stated by him in this affidavit, already quoted, whether any of the jurors then had, or ever had, any business relations with any one connected with the city attorney's office, either as clients or otherwise. This question elicited no reply, and was followed by the statement of plaintiff's attorney that he would take it for granted that none of them had any such relations, unless they let him know to the contrary. To this statement no juror made reply. There is a slight controversy in the affidavits as to the form of question employed by the plaintiff's attorney. Russ says the question was whether any juror was acquainted with the city attorney, Laing, and whether he had done any business for them of any kind, and in this statement Dirnberger concurs. Whether this was in fact the question is a matter of little importance, as the question in either form called for a fair and frank disclosure on the part of every juror of any relation existing between such juror and the law department of the defendant, and there is no rule which will deprive the plaintiff of his right to such a disclosure because he used the words "city attorney" instead of "corporation counsel." That the purpose of the inquiry was fully understood by the juror Dirnberger is made very plain by the statement in his affidavit that "he expected that question would be asked by said attorney, which would require him to state that he had had business with the corporation counsel's office;" that he "expected that question would be asked regarding his acquaintanceship with the corporation counsel," "but no question was asked by the plaintiff's attorney which called for any such answer." And Russ says that the reason why he can recall "what occurred at that time is that he knew that said Dirnberger and one or two other jurors were acquainted with the corporation counsel, Browne, and deponent expected that such questions would be asked by plaintiff's counsel." In view of these statements, as before stated, it is a matter of but little importance which question was asked by the plaintiff's attorney. The juror knew the purpose of the inquiry and the information which was desired, and it was his duty to make the disclosure, which would probably have led to his being excused from the jury. Moreover, it is the plain inference from the affidavit of Russ

that he knew that this juror was in the employ, to some extent, of the defend-ant, through its "corporation counsel," and with this in mind gave particu-lar attention to the examination of the jury, for the purpose of ascertaining whether the plaintiff's attorney asked the precise question calling for a dis-closure of this relation between the juror and the corporation counsel. By this joint act, or rather failure to speak, on the part of the juror and the agent of the city, when fair dealing required the disclosure to be made, the plaintiff has, at least, been deprived of the right to reject from the jury one whose relations to the defendant were of such a character as to justify, if not require, such action. The result of this act on the part of the juror has been to deprive the plaintiff of a legal right. The act was, therefore, such legal misconduct on the part of the juror as to entitle the plaintiff to a new trial.

It is not intended to indicate that the conduct of the juror Dirnberger was corrupt, and it may not be stated with any certainty that his presence upon the jury improperly influenced the verdict, but it is desirable that in the for-mation of a jury every legal right shall be preserved to a party to the end that the verdict when recorded shall be understood to be the result of the unbiased judgment of the panel. There may be a suspicion that such a ver-dict has not been reached in this case, and, that remaining, it is the duty of the court to permit another trial of this action. In Knight v. Freeport, 13 Mass. 217, a motion for a new trial was granted because the son-in-law of the plaintiff, and a witness in the case, made a remark to one of the jurors. The court, in disposing of the motion, says: "It is not necessary to show that the mind of the juror, thus tampered with, was influenced by this at-tempt. Perhaps it is not in his power to say whether it was influenced or not. If he was, there is sufficient cause to set aside the verdict; and, if he was not, and the party who has gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We cannot be too strict in guard-ing trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the result of their causes; and every one ought to know that, for even the least intermeddling with jurors, a verdict will always be set aside." The remarks of this learned judge have their plain application to the case in hand, and to any case, where the complaining party is, by the act of the juror, or the silence of those who ought in good con-science to speak, led to accept a juror who may be, by his interest, even uncon-sciously influenced against such a party. We have seen that this describes the position of the plaintiff here, and it is much better that the expense of a new trial be incurred than that a verdict reached in a manner open to the least suspicion should be permitted to stand. This conclusion renders it un-necessary to examine the second ground upon which this motion is made. A new trial being had, it perhaps should not be influenced by any unnecessary expression of opinion upon the merits. An order may be entered setting aside the verdict of the jury, and permitting a new trial of this action.

Argued before DWIGHT, P. J., and LEWIS, MACOMBER, and HAIGHT, JJ.

Mr. Laing, City Atty., for appellant.
Wm. W. Hammond, for respondent.

PER CURIAM.   Affirmed on the opinion of the special term.

---

(70 Hun, 6.)
BECKER v. TOWN OF CHERRY CREEK.

(Supreme Court, General Term, Fifth Department. June 23, 1893.)

LOCAL ACTIONS—RECOVERY ON TOWN BONDS.
    An action to recover the amount due on town bonds the validity of which is denied is not brought to establish a "lien or other interest in real