JACK WHITE v. STATE.

176 So. 842.
Division A.
Opinion Filed November 6, 1937.

*F. Churchill Mellen,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—The writ of error brings for review judgment of conviction of manslaughter had under an information in two counts. The conviction was under the first count which charged that the defendant "on the 18th day of August in the Year of Our Lord One Thousand Nine Hundred and Thirty-five at and in the County of Escambia aforesaid, being then and there intoxicated, did then and there, while so intoxicated, feloniously drive and operate a motor vehicle, to-wit: an automobile, over and upon a public highway in Escambia County, Florida, to-wit: that certain public highway commonly known as the Pensacola-Flomaton Highway, and by the operation of the said motor

vehicle, to-wit: an automobile, did then and there operate and drive the same into and against the body of one Clinton McCloud, on and near said highway, and by reason of same did strike, wound and injure the said Clinton McCloud, and by thus striking the said Clinton McCloud, did inflict in and upon his head, body and limbs, mortal wounds, from which mortal wounds, the said Clinton McCloud did then and there languish, and thence continue to languish, until on the 19th day of August, A. D. 1935, the said Clinton McCloud, a human being, did then and there die."

Plaintiff in error presents six questions.

The first question challenges the sufficiency of the evidence to sustain the verdict.

The second and third questions are based upon the showing in the record that a juror being examined on his *voir dire* stated in answer to a question by defendant's counsel that he had never been represented by either of the attorneys representing the State, when in truth and in fact he had been represented by one of such attorneys in a matter of considerable consequence to the juror and that during the progress of the trial when the court was in recess this juror and the attorney who had represented him as his counsel in the matter referred to had discussed the matter as to which such attorney represented such juror.

The fourth question challenges the refusal of the trial court to give a certain charge requested by the defendant.

The fifth question challenges the action of the court in refusing to direct a verdict in favor of the defendant on the second count of the information.

The sixth question challenges the action of the court in refusing to require the State to elect on which count of the information it would proceed in the trial.

The first question must be answered in the negative, as there was sufficient substantial evidence, if believed by the jury, to sustain the verdict.

The charge requested by the defendant and referred to in the fourth question was not warranted under the facts of the case and, therefore, was properly refused.

The fifth question presents a matter which is immaterial because the jury, in effect, acquitted the defendant on the second count of the information.

The contention presented by the sixth question concerning a matter as to which the court was authorized to exercise sound judicial discretion and it has not been made to appear that there was an abuse of that discretion so as to require a reversal of the cause.

As to the contentions presented by the second and third questions above referred to, we feel that they must be resolved in favor of the plaintiff in error. It is not so much what the effect of the irregularity may have been in this particular case as it is what the effect of such conduct might be which arrests our consideration in this regard.

Either party to a suit which is to be tried before a jury has the right to know whether or not any individual who may be chosen to serve on the jury is, or has been, represented by one of the attorneys employed in the case on trial. The relationship of attorney and client is a close and confidential one. The creation of that relationship is evidence of peculiar confidence existing in the mind and conscience of the client toward the attorney chosen by him to represent him and communications between the attorney and client are privileged communications so that the client may repose utmost confidence in his attorney.

It, therefore, follows that when the attorney for one of the parties to a suit asks a proposed juror who is being ex-

amined upon his *voir dire* whether or not he is or has been represented by either of the attorneys appearing in the case, he is entitled to have a full, frank and truthful answer. If the venireman answers "yes," then the attorney propounding the question may go further for the purpose of determining whether or not that relationship is such as either to disqualify the venireman or as to make him so undesirable as a juror in the cause that the party represented by such attorney propounding the question may exercise his right of challenge of that juror. If the juror, by inadvertence or otherwise, answers the initial question falsely he withholds from the attorney propounding the question and his client vital information.

In this case the question was properly presented on motion for new trial. Both the juror and the attorney who had theretofore represented him admitted that such was a fact.

In Fealy v. Bull, 42 N. Y. Sup. 569, the Court said: "The juror, in stating on his examination that he had never had any business relations with the plaintiff's attorney, did not tell the truth. The attorney was there, but he said nothing. He gives no explanation of his silence. Had the truth, as Forshee now claims it to be, been then stated, it is very apparent that he would not have been allowed to sit as a juror. The right of challenge is an important one, and the conduct of the juror, countenanced as it was by the plaintiff's attorney, operated to deprive the defendant of a privilege which the law gave him. He had a right to examine the juror and to expect that the truth would be told. The case of McGarry v. City of Buffalo, 24 N. Y. Supp. 16, is in some respects like this, and there an order for a new trial was affirmed."

Reference to the opinion in McGarry v. City of Buffalo,

24 N. Y. Supp. 16, supports the holding of the Court in Fealy v. Bull, *supra*. The principle involved was discussed by this Court in Owens v. State, 68 Fla. 154, 67 Sou. 39.

The Supreme Court of Alabama in the case of *Ex Parte* Alabama Fuel & Iron Co., etc., v. Courson (Ala.) 101 Sou. 642, quoted with approval from Craig & Co. v. Pierson Lbr. Co., 169 Ala. 548, 552, 53 Sou. 803, 804, saying:

"Aside from protecting the rights of parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any person calculated to influence the jury in returning a verdict. So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. Not only the evil in such cases, but the appearances of evil, if possible, should be avoided."

The record makes it clear that the untruthful answer made by the juror, as herein referred to, was with no intent to deceive counsel. It is also clear that the attorney who had represented the juror may have, for the moment, forgotten the incident and, therefore, did not correct the answer of the juror. That all this happened inadvertently can not be said, however, to cure the error.

The record also shows that the error was emphasized by the attorney approaching the juror before the conclusion of the trial and discussing the service rendered by the attorney to the juror. The rule invoked exists not only for the purpose of preventing actual evil but also to prevent the appearance of evil. The defendant in this case was, as is the defendant in every other case, entitled to have the evidence adduced before the jury weighed and considered by

a jury, each member of which stands fair and impartial and not subjected to any outside influence. It would be unreasonable to expect the courts to determine that in one case a juror will be required to answer truthfully proper questions propounded to him on his *voir dire,* while in another case he might with impunity answer them falsely.

Therefore, without attributing evil motives to the juror or to counsel, we must hold that the unfortunate incident was sufficient to require the granting of a new trial.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.