178 So.2d 341 (1965)
Charles Max NEWTON, Appellant,
v.
STATE of Florida, Appellee.
Robert Frederick JOHNSTON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5083, 5099.
District Court of Appeal of Florida. Second District.
July 15, 1965.
Rehearing Denied September 28, 1965.
*342 Steadman S. Stahl, Jr., Special Asst. Public Defender, Ft. Lauderdale, for appellant-Newton.
Jack P. LaMarr, Asst. Public Defender, Ft. Lauderdale, for appellant Johnston.
Earl Faircloth, Atty. Gen., Tallahassee, and John H. Smith, Asst. Atty. Gen., Miami, for appellee.
SMITH, Judge.
The indigent defendants in these consolidated appeals were jointly tried on an information charging them with second degree murder. Although vigorously and effectively defended by court-appointed counsel, each was found guilty and sentenced to life imprisonment. The verdicts are amply supported by substantial competent evidence including testimony by an eye-witness, *343 a pathologist, a ballistics expert, police officers and others. Consequently, the defendants base their appeals primarily upon alleged errors in the conduct of the proceedings including (1) the denial of their pre-trial motions for funds to hire an investigator and for a transcribed copy of testimony at the preliminary hearing, (2) the disqualification of one juror and substitution of an alternate after a panel had been selected and sworn and (3) the refusal to include in the jury instructions a requested cautionary charge concerning testimony by an accomplice. We find no error in these or other rulings and affirm.
The defendants, "Johnnie" Newton and "Bobbie" Johnston, together with "Hank" Bowman and "Pete" Agriesto spent most of Monday, December 30, 1963, drinking together in various bars in Ft. Lauderdale. Several persons saw them together that evening first at Eddie's Bar and later at Tom's Bar located in the Davie section of the city. At Eddie's Bar Agriesto put his wallet and checkbook into the purse of Mrs. Novak, a patron with whom he had been conversing. After first stopping at Tom's Bar the four men escorted to her home a blond woman patron whom Newton had met at Eddie's Bar. Early Tuesday morning a telephone call from Mrs. Novak resulted in police officers being dispatched to Agriesto's apartment. They were there looking for Agriesto when Bowman and the two defendants drove up. Bowman approached the officers carrying a fully loaded .22 caliber pistol. He was arrested for manual possession of a weapon as well as public intoxication. Newton and Johnston were arrested for public intoxication. A search disclosed another .22 caliber pistol, with one spent cartridge in one chamber and eight live rounds in other chambers, under the front passenger seat of the car. Later that morning Agriesto's dead body was found lying by a road in a sparsely inhabited area of the Davie section of Ft. Lauderdale. He had a pistol wound in his brain and another through his heart. Shortly afterwards a .38 caliber pistol with one fired casing under the hammer and five live rounds in other chambers was found lying under an automobile parked near Agriesto's apartment.
The defendants and Bowman were charged with first degree murder and separate counsel were appointed to represent each. Appointed counsel's efforts at the preliminary hearing resulted in a reduction of the charges against the defendants to second degree murder and the release of Bowman upon posting security as a material witness. An information charging the defendants with second degree murder was filed and the public defender was appointed to represent them. The same attorney who represented Newton at the preliminary hearing also represented him in the trial court and in this court as a special assistant public defender. Johnston was represented in the trial court and in this court by a regular assistant public defender.
We find no merit in the defendants' contentions that they were denied the effective assistance of counsel. In addition to obtaining a reduction of the charges against them appointed counsel persuaded the court to exclude from the jury's consideration the defendants' purported confessions or incriminating statements as well as the following damaging statement allegedly made by Agriesto to Mrs. Novak: "The boys are going to kill me." The evidence before the jury did not establish the reason or motive which led the defendants to kill Agriesto but Bowman's eye-witness account of the murder was corroborated in numerous respects by other witnesses including police officers, a pathologist and a ballistics expert. None of the witnesses who saw the four men together before the slaying positively identified all of them, but each identified two or more and their combined testimony, together with that of the police officers, left no doubt that Bowman and the defendants were with Agriesto shortly before he was murdered and were together shortly afterwards in possession of the murder weapons. In brief, the defendants' *344 convictions did not result from lack of funds or ineffective representation; they resulted from overwhelming evidence effectively gathered and presented by the office of the prosecuting attorney. The evidence so produced did not merely tend to incriminate the defendants. It established beyond any doubt that these defendants were, in fact, guilty of the murder of Agriesto.
The defendants' pre-trial motions for orders providing funds to hire a trained investigator and for transcribed copies of testimony given at the preliminary hearing overlook the complete absence of any authority, statutory or otherwise, for a court order authorizing expenditures for such purposes. The defendants' contentions that appointed counsel must be furnished resources for conducting an investigation and opportunities for discovery equivalent or comparable to those enjoyed by the public prosecutor as a matter of due process overlook important and fundamental differences between the duties and obligations of prosecuting attorneys and those of defense counsel. A prosecuting attorney is not a private attorney retained to secure convictions on behalf of other private individuals seeking revenge for a crime. He is a public officer and holder of a quasi-judicial position. As such, he is charged with the duty of assisting the courts in seeing that justice is done by endeavoring to ascertain the true facts whether they lead to conviction or acquittal.[1] A public prosecutor has no right or duty to conceal or suppress evidence favorable to an accused and some types of information disclosed by his investigation are available to counsel for an accused. The additional duties and obligations of his office and position give rise to certain rights privileges or prerogatives not properly shared by defense attorneys. Among these is the right or privilege ordinarily to determine whether testimony taken at a preliminary hearing shall be transcribed. The prosecuting attorney did not have the testimony transcribed.[2] In short, due process does not require that counsel appointed to represent indigent defendants be furnished funds for investigation or opportunities for discovery comparable to those available to the prosecuting attorney.
That appointed counsel were not handicapped at the trial by the lack of a transcript of Mrs. Novak's prior testimony is amply sustained by the record. While the state relied in part upon her positive identification of Agriesto and Newton, it did not rely upon her questionable or uncertain identification of Johnston. He was positively identified, among others, by a woman patron of Tom's Bar. A transcript disclosing a slight discrepancy in Mrs. Novak's testimony concerning the exact words spoken to her by Agriesto obviously would not have proved useful since the court sustained appointed counsels' objections to a proffer of her testimony concerning Agriesto's statement. The record also refutes the allegations in the defendants' pre-trial motion for funds that a trained investigator was needed to locate witnesses, specifically, Newton's blond woman acquaintance. She proved to be a patron of Eddie's Bar who lived two blocks from Tom's Bar and was known, among others, by Eddie's bartender, Mrs. Novak and the woman patron of Tom's Bar who saw her leave that place with Bowman and the defendants on the night in question and telephoned her the next morning to see if she was all right. Further, Mrs. Novak and Eddie's bartender were acquainted and each was also acquainted with Newton and the *345 blond woman. Finally, all four of these persons appeared and testified for the state at the trial and the blond woman waited the better part of two days before she was called to the stand. Contrary to the defendants' contentions appointed counsel effectively represented them even though they lacked resources for investigation or opportunities for discovery comparable to those enjoyed by the prosecuting attorney.
After a panel and one alternate juror had been selected and sworn but before any evidence was presented it was discovered that one juror was under prosecution for a crime and was represented in that matter by Newton's appointed attorney. Apparently because he and his attorney had never met and because he erroneously assumed that the charges in question were no longer pending, this juror incorrectly answered certain questions reasonably designed to disclose such facts. On his own motion the trial judge discharged this juror for lack of statutory qualifications and substituted an alternate.[3] The state could have successfully challenged this juror even after the panel was sworn because of his failure fully, frankly and truthfully to disclose his relationship with Newton's attorney.[4] While the state may have waived its rights by failing to formally challenge the juror on this or on the alternate statutory ground, such waiver did not affect the trial judge's authority or discretion to discharge the juror for lack of statutory qualifications and substitute an alternate on his own motion.[5] Furthermore, no complaint is made here that the alternate who served was not qualified. A defendant is entitled to have only qualified jurors but he is not entitled to have any particular juror serve.[6]
The record does not disclose the motive, reason or cause of the murder. Bowman testified that the four men got out of the car to urinate whereupon Newton shot Agriesto in the chest and Johnston shot him in the head. According to Bowman, he personally had no reason to shoot Agriesto; there had been no quarrel or conversation before the shooting; it was unexpected and he was surprised and frightened. Bowman testified that Agriesto had produced the guns earlier but that he (Bowman) did not have a gun before or after the shooting until he and the defendants arrived at Agriesto's apartment and Newton instructed him to get the fully loaded .22 pistol out of the car. An accomplice is one who knowingly, voluntarily and with common intent unites with others in the commission of the crime. The usual test by which to determine whether or not one is an accomplice of an accused on trial is whether or not he could be prosecuted and punished for the crime with which accused is charged. Bowman's mere presence at the scene of the crime did not make him an accomplice in the absence of any evidence that he took part in the commission of the crime either by way of aiding or by way of encouraging its commission. In the absence of any evidence which could constitute Bowman an accomplice the court *346 correctly refused to include in its jury instructions a cautionary charge on testimony given by an accomplice.[7]
Affirmed.
SHANNON, Acting C.J., and ANDREWS, J., concur.
NOTES
[1] 30 Fla.Jur., State and Proecuting Attorneys, §§ 2, 13.
[2] Section 902.11, Fla.Stats., F.S.A.: "At the request of the prosecuting attorney the testimony * * * shall either be reduced to writing * * * or be taken in shorthand by a stenographer and transcribed. * * * If the testimony, or any part thereof, is reduced to writing at the request of the prosecuting attorney, a copy of such testimony * * * shall be furnished free of cost to defendant or his counsel."
[3] "No person who is under prosecution for any crime * * * shall be qualified to serve as a juror." § 40.07(1). Fla. Stats., F.S.A.
[4] See White v. State, 1937, 129 Fla. 885, 176 So. 842 (incorrect answer on voir dire which concealed fact juror had been represented by one of state's attorneys was ground for new trial); "A challenge to an individual juror may be made only before the juror is sworn to try the cause; except that the court may for good cause permit it to be made after the juror is sworn, but before any evidence is presented." § 913.04, Fla.Stats., F.S.A.
[5] See Keech v. State, 1876, 15 Fla. 591 (not error to discharge a juror found to be an alien after jury had been sworn); "* * * Alternate jurors * * * shall replace jurors who * * * become unable or disqualified to perform their duties. * * *" § 913.10(2), Fla.Stats., F.S.A.
[6] See Bailey v. Deverick, Fla.App. 1962, 142 So.2d 775, 95 A.L.R.2d 953; Cf. Annot. 95 A.L.R.2d 957 (1964).
[7] See Myers v. State, 1901, 43 Fla. 500, 31 So. 275 (witness originally indicted as accessory not accomplice where nol. pros. had been entered as to him and no evidence connected him with the crime). Compare Coston v. State, 1939, 139 Fla. 250, 190 So. 520 (court should have instructed jury concerning testimony by accomplice where co-defendant not on trial testified for state). See also 1 Underhill's Criminal Evidence (5th ed.) §§ 175-176; 2 Wharton's Criminal Evidence, (12th ed.) § 448; 23 C.J.S. Criminal Law § 786; 14 Am.Jur., Criminal Law, § 110.