ON MOTION FOR REHEARING
BOOTH, Judge.
Upon consideration of the State’s motion for rehearing, which alleged that the jury instruction error addressed in this court’s original opinion never occurred because the record before this- court was erroneously transcribed, the original opinion is withdrawn.
Following remand to the trial court for an evidentiary hearing on the State’s claim, the court entered an order correcting the transcript to reflect that the jury instruction was correctly read. This turn of events underscores the truth of the Supreme Court’s statement in Craig v. State, 510 So.2d 857, 860 n. 1 (Fla.1987), that “[ijdeally, proceedings should be reported by means of both tape-recording and shorthand reporting. Shorthand notes by themselves are susceptible to mistakes and inaccuracies.” Because the record reflects that the jury instruction was read correctly, appellant is not entitled to relief on this ground.
We also must affirm on the only issue raised by appellate counsel: whether jury misconduct denied appellant her right to a fair trial. The record reflects that following the trial, defense counsel overheard a conversation on the courthouse steps between the victim and one of the jurors. The juror was upbraiding the victim because she believed that his past behavior had caused his mother considerable trouble. The juror had sworn during voir dire that she did not know appellant, the victim Ben Williams, or any of the members of Ben Williams’ family.
Counsel filed a motion for new trial with affidavit setting out the conversation overheard between the juror and the victim in the presence of another unidentified woman,- wherein the juror stated: “I know all the problems and heart break you’ve caused your -mama in the past. I hope now you’ll get yourself straightened out.” When questioned about what she had meant, the juror admitted the conversation, but claimed that she was referring to the victim’s having brought appellant’s daughter to the bar where the shooting occurred. The questioning was as follows:
Q [Thomas Stone, defense counsel] Okay. Did the Judge ask you if you knew any of the family of Ben Williams?
A [juror] Yes.
Q What was your answer to that?
A No, I didn’t.
Q You don’t know any of those people?
A No, I don’t.
Q Did you have any conversation after the — y’all had come back in court and it had been out. Did you have any conversation with the members of the family of Ben Williams?
A Yes, I did.
Q Okay. And where did you have that conversation?
A Right on the front steps.
[[Image here]]
Q Would you tell the Judge what that conversation was?
A I was just telling the young fellow that he had caused his mother so much trouble, and he shouldn’t do that again.
Q But you didn’t know any of these people before the trial?
A I know them by face, but I didn’t know their names.
*1278 Q, Okay. When you said that he had caused his mother a lot ■ of problems, what did you mean by that?
A What I mean by that, first, I said he shouldn’t have carried his daughter to that — whatever place that were. I think that was wrong.
Q Did you have any prior knowledge of anything of this case?
A No, I sure didn’t.
Q Or Ben Williams’ prior problems that Sharon Williams and he had had?
A I didn’t even know them.
The juror’s answer was evasive and nonre-sponsive. It did not explain how the juror knew about various problems the victim may have caused his mother in the past or how the juror even knew that the victim had a living mother. Moreover, the juror’s courthouse-steps conversation clearly implied knowledge of several past instances of the victim’s behavior. While her testimony unconvincingly tried to explain away this implication by attributing it to a single instance of taking the daughter to a bar, the conversation, as admitted, belies this explanation.
Counsel did not follow up and ask specific questions to attempt to pin her down, instead declining the opportunity to elicit further information. This failure to further develop the record made it impossible to determine the true extent of the juror’s knowledge and possible bias. See White v. State, 129 Fla. 885, 176 So. 842 (1937), Thompson v. State, 300 So.2d 301 (Fla. 2d DCA 1974); Mitchell v. State, 458 So.2d 819 (Fla. 1st DCA 1984); Sanders v. State, 73 So.2d 292 (Fla.1954).[1] Consequently, no error was shown by the trial court’s denial of a new trial.
Accordingly, the judgment of conviction is AFFIRMED.
ERVIN and WENTWORTH, JJ., concur.

. We expressly do not rule on the battered woman syndrome, since this defense was never raised at trial. The record reflects that this was a potentially viable defense, which is recognized in Florida, Ward v. State, 470 So.2d 100 (Fla. 1st DCA 1985), review denied, 480 So.2d 1296 (Fla.1985), Borders v. State, 433 So.2d 1325 (Fla. 3d DCA 1983), Terry v. State, 467 So.2d 761 (Fla. 4th DCA 1985), review denied, 476 So.2d 675 (Fla.1985), Hawthorne v. State, 408 So.2d 801 (Fla. 1st DCA 1982), review denied memorandum, 415 So.2d 1361 (Fla.1982), Hawthorne v. State, 470 So.2d 770 (Fla. 1st DCA 1985), and is widely recognized in other jurisdictions. See Annotation, Admissability of Expert or Opinion Testimony on Battered Wife or Battered Woman Syndrome, 18 A.L.R. 4th 1153 (1982); Criminal Law: The Battered Woman Defense, 34 P.O.F.2d 1; Note, The Battered Wife's Dilemma: To Kill or to be Killed, 32 Hastings L.J. 895 (1981); Kieviet, The Battered Wife Syndrome: A Potential Defense to a Homicide Charge, G. Pepperdine L.Rev. 213 (1978); Smith v. State, 247 Ga. 612, 277 S.E.2d 678 (1981); Commonwealth v. Rose, 725 S.W.2d 588 (Ky.1987); State v. Allery, 101 Wash.2d 591, 682 P.2d 312 (1984); People v. Minnis, 118 Ill.App.3d 345, 74 Ill.Dec. 179, 455 N.E.2d 209 (4th District 1983); State v. Baker, 120 N.H. 773, 424 A.2d 171 (1980); State v. Anaya, 438 A.2d 892 (Me.1981); State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984); Ibn-Tamas v. United States, 407 A.2d 626 (App.D.C.1979). See also Martin v. State, 501 So.2d 1313, 1314 (Fla. 1st DCA 1986); State v. Hundley, 236 Kan. 461, 693 P.2d 475 (1985). Under the circumstances, appellant may still have potential remedies for postconviction relief.