352 So.2d 1276 (1977)
Carl McQUAY, Appellant,
v.
STATE of Florida, Appellee.
No. DD-369.
District Court of Appeal of Florida, First District.
December 23, 1977.
*1277 Leonard E. Ireland, Jr., of Clayton, Duncan, Johnston, Quincey, Ireland, Felder & Gadd, Gainesville, for appellant.
Robert L. Shevin, Atty. Gen., Richard W. Prospect and Michael H. Davidson, Asst. Attys. Gen., for appellee.
MELVIN, Judge.
Appellant-defendant seeks reversal of a judgment and sentence imposed upon him for the crime of robbery by the use of a firearm. The judgment and sentence were based upon a guilty verdict rendered by a jury.
The defendant presents four points for review on appeal. We will consider them in the order in which they are presented: 1) The alleged error of the trial court in not granting a new trial when it was discovered, prior to the taking of testimony, that one of the trial jurors was acquainted with an associate of the defendant's attorney; 2) whether the jury had improperly received instructions from the bailiff that, as a matter of law, were prejudicial to the defendant's right to a fair trial; 3) whether the court erred in sustaining objections by the State to defendant's use of depositions in an effort to prove prior inconsistent statements on the part of state witnesses; and 4) whether there is ample evidence to sustain the verdict of the jury.
The record reveals that, after the jury had been empaneled and sworn, there was a recess for the evening following which the court convened and the jury was properly seated. The record then reveals as follows:
"JUROR: Yesterday a question was asked if we knew any of Mr. Ireland's associates and I really didn't think I did. But two years ago my husband's attorney for our divorce was one of his associates. I didn't know if that mattered.
"THE COURT: Is there anything in that that would effect [sic] your judgment in this case one way or the other?
"JUROR: No."
The record reveals that counsel for the defendant did not interpose any objection, did not move for a mistrial, and did not move that the juror stand aside. There were six jurors and one alternate juror empaneled. If counsel desired to complain with reference to this juror and the possibility of a prejudicial attitude on her part, the obligation was with him to do so at that time so the trial judge could rule whether a challenge was appropriate either peremptorily or for cause. In the event of a favorable ruling the juror in question would be excused, the alternate juror seated and the trial would proceed. To complain post verdict, *1278 by the avenue of a motion for a new trial, comes entirely too late to merit appellate review. There is nothing in the record that would give the slightest indication that the juror's acquaintance with defense counsel's associate in any way affected her judgment in the rendition of the verdict in this cause. The mere fact that a juror is acquainted with either counsel in a case does not per se disqualify such juror. See Roberson v. United States, 249 F.2d 737 (5th Cir.1957), cert. den. 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958), and Newton v. State, 178 So.2d 341 (Fla. 2d DCA 1965).
As to the alleged error relating to the communication by the bailiff to the jury, when this matter first came to the attention of this court and upon determining that the record was insufficient for a decision here to be reached, the cause was remanded to the trial court with directions to determine in an evidentiary hearing what, if anything, occurred by way of communication on the part of the bailiff to the jury and whether, if any such communication did take place, the same resulted in a denial of the defendant's right to a fair trial. In obedience to that order, the trial court conducted an evidentiary hearing, and, upon stipulation of counsel, the inquiry was limited to the taking of the testimony of the foreman of the jury. Upon conclusion of the evidentiary hearing, the court entered an order that contains the following:
"A. The Court had instructed the jury that its verdict must be unanimous, but no instruction was given having to do with the consequence of their inability to unanimously agree upon a verdict. Being concerned with this alternative the jury summonsed [sic] the bailiff shortly after its deliberations began (at which time it stood five to one for conviction) and asked the bailiff what would happen if they were unable to unanimously agree. The substance of his response was that a mistrial would result. No further exchange occurred between the bailiff and the jury."
The court then continued with findings of fact and conclusions of law as follows:
"B. The statement made by the bailiff did not affect the verdict of the jury.
"C. The statement did not infringe upon any right of the defendant.
"D. The defendant was in no wise prejudiced by the statement."
Thereupon, the court ordered and adjudged that the bailiff's statement did not result in the denial of the defendant's right to a fair trial.
It was reversible error for the bailiff to reply to the jury's question concerning the effect of the failure of the jury to agree upon a verdict, and to advise the jury of their duty to deliberate further. The bailiff should have immediately advised the judge that the jury desired to ask of the court such question whereupon it would be proper for the court to cause the jury to be seated in the jury box and to ask the question in open court.
During the evidentiary hearing, the trial judge made a most diligent inquiry of the foreman to determine if the communication on the part of the bailiff had any effect upon the rendition of the verdict, and based upon the totality of the testimony of the bailiff, the court reached the conclusions as we have set forth. With those conclusions, this court cannot agree. The evidentiary hearing reveals that the jury was quite undecided as to whether or not it could bring a verdict that was based on less than a unanimous vote of the jury, and a discussion of that question led to their having asked the bailiff for information. The exact manner in which the question to the bailiff was phrased or the exact manner in which the bailiff answered the question, of course, was not within the memory of the foreman. In substance, the foreman related to the judge that what the bailiff stated did not have any effect upon his deliberations, and the court further inquired:
"Q. Did it affect, as far as you know, the deliberations of the jury?
"A. That's a hard question to answer. That's a very hard question to answer.
"Q. Well, I can understand that you would not be in a position to know what factors the other members of the jury may or may not have taken into consideration, *1279 so let me narrow it a little bit and ask this, did it make any difference to you, to your decisions, as to whether or not the jury was or was not 
"A. No, it didn't make any difference to me. Can I continue?
"Q. Yes sir, certainly.
"A. I don't know if I should even, I don't know if this is part of the question, but the jury at that time they didn't want to come out, most of the jury members felt that we should come out with a six/zero decision either way and sit in the jury room until that time and when the bailiff came in and told us that we could come with less than a six/zero decision, the jurors as a whole still felt that we should deliberate longer and see if we could iron out our differences and come out with an adequate decision.
"Q. All right, sir. Going one step further, Mr. Rosenblatt, you told us of the question asked, can you tell us what answer was given by the bailiff?
"A. Once again this is not exact words.
"Q. I understand, sir.
"A. This is the way I took it and I think the jury took it. He said, yes, we could come out with less than  we could come out with a hung jury, it would be tried again and as a final clause he said, why don't you take your time and see if you can come up with a, you know, just take your time and see what happens, don't come out so fast. Something to the effect that we had only been in there a short time and see if we could come up with an adequate decision."
The judge inquired of the foreman just how it came about that the question was asked of the bailiff. The foreman replied that, immediately upon retiring to consider the jury's verdict, the ballot was taken and it was a five/one vote and there was a discussion for some 30 or 40 minutes thereafter, among the various jurors:
"... [T]he one person who was against it was not changing and there was a lot of debate, so someone brought up the question, I believe it was the person who wasn't changing, brought up the question  it was brought up that we had to come out with a decision and the person who wasn't changing said, you don't have to come out with a decision, if we come out to a five/one vote then that's what we come out with. So people thought you hadn't said that in your final remarks to the jury before we went in, so that's why we asked the question, they thought you said we had to come out with a decision either way."
The court then inquired:
"Q. From having presided over the deliberations, Mr. Rosenblatt, did you feel that the bailiff's response to your question had any effect whatever upon the ultimate verdict?
"A. No.
"Q. Is it your feeling that they jury would have reached that verdict had the question not ever been put to the bailiff and the answer given?
"A. Yes.
"Q. All right.
"A. Can I continue.
"Q. Certainly, sir.
"A. The bailiff's answer made us aware of what our possibilities were, it didn't at all influence any of our decisions, he just made us aware of all the possibilities and his clause at the end just made us aware of how long we had been in there and it didn't at all influence our decisions."
The judge then inquired of the foreman if the members of the jury understood that if they could not agree upon a unanimous verdict of either guilty or not guilty, there would be a retrial of the case. The foreman responded that they did not at first understand that situation. Then, the record reveals:
"THE COURT: I see. Did they give any thought as far as you know as to what would happen in the event they couldn't reach a unanimous verdict?
"A. No, because soon after that point was brought up was when the question was asked.
"Q. I see and it's your feeling that whatever remarks were exchanged between the jury and the bailiff didn't in anywise affect the verdict of the jury?
"A. I don't think so."
*1280 The court then inquired of counsel for the State and the defendant if they desired any further questions to be asked, and they each replied in the negative. It is, therefore, apparent that the trial judge made every effort to determine if the bailiff's communications adversely affected the jury, and the foreman assured him that such communications did not. We cannot, however, dismiss as harmless error the action of the bailiff in advising the jury as to the legal effect of a verdict not unanimous, in giving to the jury what was the equivalent of a layman's understanding of the charge given by the court to a jury that is unable to agree on a verdict, or in charging them their responsibility to take their time and to deliberate in an effort to reach a verdict. See Bell v. State, 311 So.2d 179, at 181 (Fla. 1st DCA 1975); and Thomas v. State, 348 So.2d 634, at 635 (Fla. 3d DCA 1977). The State's reliance upon Ennis v. State, 300 So.2d 325 (Fla. 1st DCA 1974), is ill-placed. The communication by the bailiff with the jury in that case, although branded as improper, was found to be on a subject that was helpful to the defendant.
Because this matter may receive further consideration at the trial level, we will discuss the remaining question with reference to the use of depositions to establish a prior inconsistent statement on the part of two state witnesses and the court's sustaining the state's objections.
The record reveals that counsel, as to each witness, had begun referring the witness to a deposition or a portion of a record at a previous trial, and the witness was asked if certain questions had been asked and certain answers given and if those matters were properly dealt with by the response of the witness. The record then reflects that, when counsel began to read what is alleged to be a question asked of the witness, the State objected and the court sustained the objection. In each of these instances, the record is then silent as to what question would have been propounded to the witness and what his alleged previous answer would have been. Counsel was content not to proffer that material into this record and, therefore, the matters which are extensively quoted in counsel's brief may not be considered, because the same reflects material not properly before this court.
In the present posture of this case it would not be appropriate to discuss the question as to the sufficiency of the evidence to support the verdicts.
REVERSED with directions to grant a new trial.
SMITH, Acting C.J., and ERVIN, J., concur.