MICKLE, Judge.
Danny Judah (Appellant) appeals from a judgment and sentence entered after the jury found him guilty of possession of over 20 grams of cannabis and carrying a concealed firearm. Appellant claims reversible error in the trial court’s denial of his motion to suppress (Issue II) and his motion for judgment of acquittal (Issue III). From our review of the proceedings below, we conclude that the points raised in Issues II & III are without merit and warrant no further discussion. § 901.151, Fla.Stat. (“stop and frisk” law); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989) (setting forth prerequisites for proper investigatory stop and detention); § 790.001(2), Fla.Stat. (defining “concealed firearm”); Ensor v. State, 403 So.2d 349, 353-54 (Fla.1981) (affirming conviction for possession of concealed firearm). In Issue I, Appellant challenges the decision of the trial court sua sponte to excuse without a full inquiry several members of the venire who knew Appellant, but to retain on the jury panel those individuals who knew the state’s key witnesses. From our review of the voir dire proceedings, as set forth in pertinent part, infra, we conclude that the judicial error alleged in Issue I was not preserved for appeal. Turner v. State, 645 So.2d 444, 446 (Fla.1994); Maxwell v. State, 443 So.2d 967, 970 (Fla.1983) (argument that the trial court erred in excusing a juror for cause not preserved without a timely objection). Accordingly, we affirm judgment and sentence.
However, we feel compelled to set forth and comment on the unorthodox and inconsistent methods used by the trial court in conducting the jury selection process. The marijuana and the firearm had been discovered in Appellant’s truck by officers of the Monticello Police Department in Jefferson County. With the venire assembled, the trial judge explained the process of voir dire:
[Cjounsel for the prosecution and counsel for the defendant, will be asking you questions touching on your qualifications to serve as jurors in this particular case. This part of the case is what’s known as the voir dire examination, which is for the purpose of determining whether your decision in this case would in any way be influenced by opinions which you now hold or by some personal experience or special knowledge which you may have concerning the subject matter to be tried. The object is to obtain six persons who will impartially try the issues of this case upon the evidence presented in this courtroom, without being influenced by any other factors. Please understand that this questioning is not for the purpose of prying into your private affairs but it is only for the purpose of obtaining an impartial jury.
The charges in the information were read, and the venire was asked whether anyone knew anything about Appellant’s case through rumor, personal knowledge, the media, or discussions with others. The first disputed exchange involved prospective juror Houston:
THE COURT: Mr. Houston?
JUROR HOUSTON: Yes, sir.
THE COURT: Did you indicate that you had heard about it or read about it?
JUROR HOUSTON: Yes, sir, I have read about it. And also, Mr. Judah worked for the same company that I worked for. At one time, he was my employee. So I know a little bit more about the case.
THE COURT: About him?
JUROR HOUSTON: Yes, sir.
THE COURT: All right. Mr. Houston, I am going to ask that you step down. And I’ll excuse you from further jury service, then, today. Thank you for being with us.
Without an objection to the excusal, the trial court called for another venire member to fill Mr. Houston’s spot. Moments later, the trial court recognized another prospective juror who had raised his hand:
THE COURT: —have you simply read about it in the newspaper?
JUROR ROE: Yes, sir. I’m in the same boat as Mr. Houston. I hire Danny’s *996 company, the same company that Mr. Houston worked for.
THE COURT: All right, sir. I’ll ask you to step down, if you will. Thank you for being here. We appreciate your jury service, and you are excused. Let’s call another juror please.
Again, no objection to the dismissal was made.
Venireman Mr. Braswell indicated some knowledge of the case and, upon questioning by the trial court, stated that he had simply read about Appellant’s case in the newspaper. Asked whether this knowledge would interfere with his ability to serve as a fair and impartial juror, Mr. Braswell indicated “No.” He affirmatively expressed his belief that, if selected as a juror, he could base his verdict solely on the evidence heard in the courtroom. Without further immediate inquiry of Mr. Braswell, the trial court resumed questioning of others in the venire:
THE COURT: And I believe, Ms. Johnson, you indicated that you had read about it?
JUROR JOHNSON: I read about it and I was a Scout leader with Danny.
THE COURT: Then, you know him personally?
JUROR JOHNSON: Yes, sir.
THE COURT: Then, I’ll ask you to step down, if you would, please.
Ms. Johnson was excused, without objection from counsel.
The trial court returned to Mr. Braswell and asked how he knew Appellant.
JUROR BRASWELL: I just know him as a friend in the community. I was in a hunting club with him. Just friends.
THE COURT: Okay. And you’ve had more than just a passing acquaintance with him?
Mr. Braswell nodded affirmatively.
THE COURT: All right. I’ll ask that you step down, then, Mr. Braswell. Thank you for being here.
As another member of the venire (Mr. Scurry) was called, defense counsel asked to approach the bench. Although the bench discussion was not transcribed into the record, subsequent discussions in the record demonstrate unmistakably that defense counsel (Mr. Modesitt) objected at the bench and that the trial judge indicated that counsel would have occasion later to elaborate on his point. When that opportunity was given, defense counsel set forth his reason:
MR. MODESITT: During the selection of the jury, the Court inquired of certain jurors, ... probably four men, as to whether or not they knew the defendant, that the men indicated they did or that they had employed him or worked with him on various relationships at one time. And the Court automatically excluded those people for cause, and excused those jurors. I objected to that.
After the bench discussion, the trial court inquired of the next venireman:
THE COURT: Mr. Scurry, I believe you indicated that you know Mr. Judah?
JUROR SCURRY: Yes, sir.
THE COURT: How do you know Mr. Judah?
JUROR SCURRY: By high school. I know his family pretty much, his daddy.
THE COURT: Do you feel that — or would you consider him a cióse friend or an acquaintance? Or how?
JUROR SCURRY: Yes, I would.
THE COURT: A close friend?
JUROR SCURRY: Yes, sir.
THE COURT: All right. Then, I’ll excuse you from further service. Thank you for being here.
Defense counsel did not object to Mr. Scurry’s excusal, although in subsequent comments counsel characterized the removal of Scurry as “questionable.” The six jurors were selected and were duly sworn without an objection from defense counsel. Denmark v. State, 656 So.2d 166 (Fla. 1st DCA 1995) (waiver of issue where counsel failed to challenge juror for cause before jury was sworn).
The purpose of preserving alleged error in the lower tribunal is to afford the judge an opportunity to consider the matter in question. Thomas v. State, 599 So.2d 158, 159-61 n. 1 (Fla. 1st DCA), rev. den., 604 *997 So.2d 488 (Fla.1992). Four prospective jurors had been excused by the trial court before defense counsel questioned this procedure. Having carefully considered the sequence and timing of the events that led to the excusal of the succession of venire members who knew Appellant, we conclude that the issue of the sua sponte removal of Houston, Roe, Johnson, and Braswell was not preserved for appeal. Peterka v. State, 640 So.2d 59, 65-66 (Fla.1994) (lack of contemporaneous objection to court’s dismissal, for cause, of prospective juror waived issue); Cannady v. State, 620 So.2d 165, 168-69 (Fla.1993) (defendant failed to preserve issue of court’s excusal, for cause, of three potential jurors who did not feel they could vote for the death penalty, where defense counsel made a general objection but failed to object to the excusal of each venire member individually).
We are struck by the distinctly different manner in which the trial court conducted the voir dire concerning members of the venire who indicated familiarity with the state’s witnesses. The trial court asked the prosecutor and defense counsel to supply the names of individuals who might testify. The state announced that Monticello police officers Mosley, Blackmon, Murphy, and Bullock were potential witnesses. The trial court inquired as to whether anyone in the venire knew any of the state’s witnesses.
A prospective juror, Ms. Abbie Hall, stated that she knew Mosley and Bullock, was a close friend of Mosely, and had worked with Bullock when he was a little boy. The court inquired further:
THE COURT: Okay. Do you believe that your knowledge of him or the relationship with him would cause you to give any greater or lesser weight to his testimony than you would to any other witness?
JUROR ABBIE HALL: No, sir.
THE COURT: Do you believe that you could be a fair and impartial juror in this case, in spite of your acquaintanceship with him?
JUROR ABBIE HALL: Yes, sir.
THE COURT: All right. Thank you, ma’am.
A nearly identical colloquy occurred when another prospective juror, Ms. Martha Hall, indicated that she had taught Officer Mosley. In contrast to the limited inquiry made of the venirepersons who knew Appellant, the questioning of those who knew one or more of the state’s witnesses was more thorough and sought to determine whether such acquaintanceship would affect each juror’s ability to be fair and impartial. Ms. Martha Hall asserted that her assessment of the testimony would not be affected by her knowing the state’s witness. Neither of the venireper-sons Hall was excused by the court.
Venireperson Ms. Evans indicated that Officer Mosley is “a relative,” i.e., his grandmother is Evans’ stepgrandmother. Ms. Williams and Ms. Houston each acknowledged knowing Officers Blackmon and Mosley as “just acquaintances.” Prospective juror Mr. Walker admitted being an acquaintance of Lieutenant Bullock. Ms. Bishop had known Bullock and Murphy as students at the school. In each of these instances, the trial court conducted a specific inquiry to ascertain whether these potential jurors could evaluate the testimony properly despite their familiarity with various state witnesses. Each of these venirepersons answered affirmatively, and they remained on the venire. As we noted earlier, the jury was sworn without any contemporaneous objection by defense counsel. Thus, counsel never moved to strike the entire panel.
The law is well established that a trial court may exercise broad discretion in matters relating to jury selection, Chapman v. State, 593 So.2d 605 (Fla. 4th DCA 1992), as the lower tribunal occupies a position superior to the reviewing court for evaluating the responses of venire members to questions during voir dire. Cook v. State, 542 So.2d 964 (Fla.1989), cert. den., 502 U.S. 890, 112 S.Ct. 252, 116 L.Ed.2d 206 (1991). The purpose of voir dire is to secure an impartial jury. Davis v. State, 461 So.2d 67 (Fla.1984), cert. den., 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).
Especially in less populous venues such as Monticello, in Jefferson County, the *998 chances seem greater that members of the venire will be acquainted with a defendant or with a witness for the defense or the state, or have a prior awareness of certain cases. However, in the case at bar, a proper inquiry aimed toward assuring a fair and impartial jury would not have ended with the bare preliminary determination that a prospective juror knew Appellant or his family. Cf. McQuay v. State, 352 So.2d 1276 (Fla. 1st DCA 1977) (mere fact that juror is acquainted with either attorney in a case is not an automatic basis for disqualification). The potential jurors who knew Appellant and were removed for cause on that ground alone were not subjected to the proper test for dismissal for cause. § 913.03, Fla.Stat.; Waddell v. State, 458 So.2d 1140, 1141-42 (Fla. 5th DCA 1984), rev. den., 466 So.2d 218 (Fla.1985). The trial court acknowledged as much when it addressed the venirepersons who knew the state’s witnesses and conducted additional inquiry. Significantly, the court advanced the questioning one step further to address the critical issue of whether that familiarity with either a witness or the case itself would infringe on the juror’s duty to be fail’ and impartial.
On the other hand, venirepersons Mr. Houston, Mr. Roe, Mr. Braswell, and Ms. Johnson were not accorded equal treatment, and the trial court sua sponte removed them without ascertaining whether their connections with Appellant would in any way affect their abilities to fulfill their duty as jurors. The procedure used was not a proper test for determining juror competency. Lusk v. State, 446 So.2d 1038, 1041 (Fla.) (test of competency is whether juror can set aside bias or prejudice and render a verdict based solely on the evidence presented and the legal instructions given), cert. den., 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); Pentecost v. State, 545 So .2d 861 (Fla.1989). We can find nothing in the record that would raise a reasonable doubt that any of those four venirepersons deserved automatic disqualification, for cause, without further inquiry to address each one’s ability to reach an impartial verdict. Turner, 645 So.2d at 447; Montozzi v. State, 633 So.2d 563 (Fla. 4th DCA 1994). At the very least, this disparate treatment of prospective jurors created an appearance of unfairness. In finding that judicial error was not preserved for review and in affirming judgment and sentence, we do not imply our condoning the methods employed by the trial court.
AFFIRMED.
WEBSTER and VAN NORTWICK, JJ., concur.