The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Marvin EVANS, Defendant–Appellant.

No. 96CA1602.

Colorado Court of Appeals, Div. II.

Nov. 13, 1998.

Rehearing Denied Dec. 24, 1999.

Certiorari Denied Nov. 15, 1999.*

* Justice SCOTT and Justice MARTINEZ would grant as to the following issue:

Does a trial court commit reversible error when it forces the defendant to reenact the victim's death?

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jerry N. Jones, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge VOGT.

Defendant, Marvin Evans, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder. We affirm.

Defendant strangled the victim, his girlfriend, with a necktie while the two were fighting. At trial, defendant admitted strangling her, but claimed that he had done so in response to provocation by her.

The jury was instructed on first degree murder, with which defendant had been charged, and also on second degree murder, heat of passion manslaughter, reckless manslaughter, and criminally negligent homicide. The conviction here at issue resulted.

## I.

Defendant first asserts that the trial court erred in excusing a venire member *sua sponte*, without allowing defense counsel to question him and without a challenge for cause by either side. We agree that counsel should have been permitted to question the prospective juror, but conclude that neither this error nor the dismissal without a challenge for cause requires reversal of defendant's conviction.

The trial court asked members of the venire if any of them had a moral, religious, or philosophical reason that they believed would prevent them from serving as a juror. One prospective juror, a man of Chinese ancestry, indicated that, based on his prior jury experience, he believed the judicial system did not treat minorities fairly. The court questioned the prospective juror in detail about his beliefs, and sought to have him make a commitment to decide the case based solely on the evidence and the law. The juror was unable to make that commitment.

The trial court then excused the prospective juror, and denied defense counsel's request for an opportunity to question him further. Later, after defense counsel reiterated for the record the bases for his objection to the excusal, the prosecutor stated that she had had concerns about the excused juror based on his questionnaire, in which he apparently indicated that he was unable to support the justice system with a clear con-

science, and that she "thought it was actually a proper challenge for cause."

The right to voir dire prospective jurors is not a matter of constitutional law. *People v. Rodriguez,* 914 P.2d 230 (Colo. 1996). Rather, that right is governed by Crim. P. 24. Crim. P. 24(a)(2) provides that, after the court has asked prospective jurors any questions which it believes are pertinent to their qualifications to serve as jurors, "the parties or their counsel shall be permitted to ask the prospective jurors additional questions."

Although Crim. P. 24 affords parties or counsel the right to voir dire, the trial court has discretion to limit the scope and extent of that right. *People v. O'Neill,* 803 P.2d 164 (Colo.1990). A restriction on voir dire is reversible error only if the court abuses its discretion with a prejudicial result. *People v. Reaud,* 821 P.2d 870 (Colo.App. 1991). Prejudice will not be presumed. *See People v. Johnson,* 757 P.2d 1098 (Colo.App. 1988).

Here, it was error for the trial court to refuse to permit defense counsel to question the prospective juror. However, defendant has not established actual prejudice from this refusal that would warrant reversal of his conviction.

A defendant has a right to a fair and impartial jury, but not to a jury composed of any particular individuals. *People v. Tippett,* 733 P.2d 1183 (Colo.1987). Defendant does not allege that the jury that was seated in his case was other than fair and impartial. Further, although he suggests that, as an African–American, he was prejudiced because the excused venire member was of Asian ancestry and no minorities were ultimately seated on his jury, he does not allege or establish any systematic discrimination against minorities; nor does this case involve the prosecution's use of peremptory challenges to remove minorities, in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In these circumstances, we will not presume prejudice based solely on the fact that the excused juror was

also a member of a minority group. *See People v. Johnson, supra.*

■ Moreover, defendant's stated basis for arguing that the trial court's preclusion of questioning requires reversal is that "further questioning by the parties may have revealed that [this prospective juror] was not actually subject to a challenge for cause." However, a defendant cannot establish prejudice based on an erroneous excusal for cause where, as here, the prosecution did not exhaust its peremptory challenges and thus could have removed the individual in question from the jury even if the court had not excused him. *See Keady v. People,* 32 Colo. 57, 74 P. 892 (1903); *cf. People v. Macrander,* 828 P.2d 234 (Colo.1992)(erroneous denial of defendant's challenge for cause was not harmless where defendant had exhausted his peremptory challenges).

In *People v. Lefebre,* 981 P.2d 650 (Colo. App. No. 97CA0958, November 13, 1998), another division of this court concluded, as we do here, that it was error to excuse jurors for cause without permitting questioning by counsel. We note that although the error was found to require reversal in *Lefebre,* significantly different circumstances are presented here. In contrast to *Lefebre,* where the jurors were dismissed based solely on their questionnaire responses, the trial court in this case questioned the juror at length before excusing him; thus, the juror here was not excused only on the basis of a "previously formed or expressed opinion." *See* §16–10–103(1)(j), C.R.S.1998. Further, again in contrast to *Lefebre,* the prosecution here had sufficient unexhausted peremptory challenges to remove the juror even if he had not been excused for cause.

In addition to challenging the trial court's refusal to permit questioning, defendant argues that the court lacked authority to excuse the prospective juror in the absence of a challenge for cause by one of the parties.

It is true, as defendant argues, that neither Crim. P. 24 nor §16–10–103, C.R.S.1998, both of which address challenges for cause, expressly gives the court authority to excuse a juror *sua sponte.*

In *Keady v. People, supra,* the supreme court declined to hold that such a practice was error where the prosecution had not exhausted its challenges, there was no showing that the jury was unfair or incompetent, and the defendant thus was not prejudiced by the court's action. More recent decisions from other jurisdictions have generally upheld *sua sponte* excusals for cause, but have cautioned against such excusals when there is a question as to whether the juror is in fact unqualified to serve on the jury. *See Judah v. State,* 654 So.2d 994 (Fla.App.1995); *People v. Beasley,* 251 Ill.App.3d 872, 190 Ill.Dec. 919, 622 N.E.2d 1236 (1993); *Alvarado v. State,* 822 S.W.2d 236 (Tex.App.1992).

Here, the trial court concluded, based on its questioning, that the prospective juror could not render an impartial verdict based on the law and the evidence. If the court's assessment was correct, excusal would have been mandated under §16–10–103(1)(j) (state of mind evincing enmity or bias toward the defendant or the state), and the court would have been required to sustain the prosecution's challenge for cause. *See People v. Macrander, supra.*

Further, even if we were to assume it was error in this case to excuse the juror *sua sponte* because there was still a question as to whether he was qualified to serve, reversal of defendant's conviction on this basis would not be warranted. As noted, because the prosecutor did not exhaust her peremptory challenges, the defendant cannot establish prejudice resulting from the court's action. *See Keady v. People, supra.*

## II.

Defendant next raises various related errors which, he contends, deprived him of his right to have the jury consider whether he acted in the heat of passion. We perceive no basis for reversal.

We note at the outset that under the statutory scheme applicable to defendant's case, heat of passion manslaughter was a separate offense, having all the elements necessary to prove second degree murder plus additional elements involving heat of passion. In 1996, the General Assembly eliminated the offense

of heat of passion manslaughter and made heat of passion a factor in mitigation of second degree murder. *Walker v. People,* 932 P.2d 303 (Colo.), *cert denied,* 522 U.S. 883, 118 S.Ct. 212, 139 L.Ed.2d 147 (1997).

### A.

Defendant asserts that the trial court's instruction on lesser offenses precluded the jury from returning a verdict on heat of passion manslaughter. We disagree.

After instructing the jury on the elements of first degree murder, the trial court gave a collective instruction (Instruction 13) on the elements of second degree murder, heat of passion ("provoked passion") manslaughter, reckless manslaughter, and criminally negligent homicide. Instruction 13 referred to these as "lesser included offenses" of first degree murder, and instructed the jury that the burden was on the prosecution to prove every element of any lesser included offense beyond a reasonable doubt. It added: "If you decide that the prosecution has proven each of the elements of the crime charged, or of a lesser included offense, you should find the defendant guilty of the offense proven," and concluded: "While you may find the defendant not guilty of any or all of the crimes charged, or of any or all lesser included offenses, you may not find defendant guilty of more than one of the following offenses: First Degree Murder; Second Degree Murder; Manslaughter—Provoked Passion; Manslaughter—Reckless; and Criminal [sic] Negligent Homicide."

Consistent with his objection to Instruction 13 at trial, defendant argues that the instruction does not make clear that if the jury found that the elements of second degree murder had been established, it still needed to consider the issue of heat of passion. However, our decisions have consistently rejected this argument where the instruction given did not establish an order of priority among the various offenses, but instead left the jury free to consider heat of passion even if it found the defendant guilty of second degree murder. *See People v. Urrutia,* 893 P.2d 1338 (Colo.App.1994); *People v. Wadley,* 890 P.2d 151 (Colo.App.1994); *People v. Seigler,* 832 P.2d 980 (Colo.App.1991); *see*

*also People v. Rosales,* 911 P.2d 644 (Colo. App.1995) (involving attempted second degree murder and heat of passion).

■ Similarly here, Instruction 13 did not establish an order of priority among the enumerated offenses, but instead told the jury it could find the defendant guilty of *any* lesser offense proven by the prosecution if it did not find him guilty of first degree murder. Moreover, the jury was also told in another instruction that the fact that it might find defendant guilty or not guilty of one of the offenses charged should not control its verdict as to any other offense; and there is nothing in the record to suggest that the jury did not follow this instruction. We conclude that, under the instructions taken as a whole, the jury was not precluded from considering heat of passion even if it found that second degree murder had been proven.

Defendant also argues that Instruction 13 was erroneous because it treated heat of passion manslaughter as a lesser included offense and, consistent with that characterization, instructed the jury it could not convict defendant of both heat of passion manslaughter and second degree murder. *See* §18–1–408(1)(a), C.R.S.1998 (defendant may not be convicted of more than one offense if one offense is included in the other).

■ It is true that, at the time of defendant's offense, heat of passion was a lesser *nonincluded* offense of second degree murder. *See Walker v. People, supra.* We also are aware that, in *Walker,* the supreme court observed in dictum that instructing the jury on heat of passion manslaughter as a lesser nonincluded offense would enable a reviewing court to know with certainty that the jury had considered the elements of heat of passion, and thus would preclude a defendant from making the argument defendant makes in this case. Nevertheless, we conclude that the court's erroneous characterization of heat of passion manslaughter does not warrant reversal under the particular circumstances of this case.

Defendant did not object to Instruction 13 on the basis that it erroneously treated heat of passion manslaughter as a lesser included offense. On the contrary, he requested that

the court add "lesser included offenses" to its first jury instruction, referred to Instruction 13 as "the instruction relating to lesser included offenses," and later reiterated:

I have no objection to the jury verdict first degree murder and the lesser included offenses which include manslaughter, provoked passion. I assume that it's not yet in there but the Court's going to put it in.

Given the position taken by defendant on this issue at trial, he may not seek reversal of his conviction based on the trial court's characterization of heat of passion manslaughter as a lesser included, rather than a lesser nonincluded, offense. *See People v. McCoy*, 944 P.2d 584 (Colo.App.1996)(under doctrine of invited error, defendant who requested instruction on attempted reckless manslaughter as lesser included offense of first degree murder could not complain of his conviction on the lesser included offense as inconsistent with convictions for assault and conspiracy to commit murder).

#### B.

In a related argument, defendant claims that the trial court erred in refusing to grant a mistrial based on the prosecution's statement, during closing, that both sides agreed that "this was not provoked passion." We are not persuaded.

Defense counsel argued in closing:

If you find ... that Marvin is not guilty of first degree murder and is not guilty of second degree murder, then you look to see if he knowingly caused the act but in a heat of passion. This is the third choice that you have. And I suggest to you based on the evidence because he did not knowingly cause her death he cannot be guilty of second degree murder. He cannot be guilty of heat of passion murder.

Yes. Marvin is guilty of some things. He certainly is guilty of the harassment Count Two. And he is certainly responsible for [the victim's] death. But he is not guilty of first degree murder. He is not guilty of second degree murder. He is not guilty of heat of passion manslaughter because he did not knowingly cause her death....

And because he didn't knowingly cause the death of another person he cannot be guilty of heat of passion manslaughter.

In rebuttal, the prosecutor stated: "Ladies and gentlemen, there is agreement that this was not provoked passion. There was no—and you are going to see the definition of that. There was no irresistible urges, no provoking acts .... so we do agree that there is not provoked passion."

Defense counsel did not make a contemporaneous objection to the prosecutor's comment. Instead, after the jury left the courtroom, he objected to the statement, told the court he had not agreed that there was no provoked passion, and asked for a mistrial. The trial court noted that the kind of argument made by the prosecution was the result of "the method by which the case law requires that lesser included [offenses] be managed in a trial," and denied defendant's motion.

■ A trial court has broad discretion both with respect to the scope of final arguments and with respect to a motion for a mistrial. Its rulings on these issues will not be disturbed absent a gross abuse of discretion and prejudice to the defendant. *See People v. Baca*, 852 P.2d 1302 (Colo.App. 1992); *People v. Walters*, 821 P.2d 887 (Colo. App.1991).

■ When considering the propriety of counsel's arguments, the court must consider the statement in the context of the whole argument and in light of the evidence. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981). Further, a mistrial is warranted only if the prejudice to the accused is too substantial to be remedied by other means. *People v. Baca, supra.*

■ Under these standards, the trial court did not abuse its discretion in declining to grant a mistrial based on the prosecutor's remarks. The prosecutor was free to argue that the evidence showed there was no provoked passion. To the extent her argument was incorrect or misleading in suggesting that defense counsel "agreed" with this, the statement was not so prejudicial to defendant, when viewed in the context of the

whole argument, that the trial court's refusal to grant a mistrial can be deemed an abuse of discretion.

### C.

█ Defendant also contends that the statutory scheme in effect at the time of trial, as applied to him, violated his right to due process by shifting the burden to him to prove the elements of heat of passion manslaughter. We conclude that *Walker v. People, supra,* is dispositive of this contention.

As in this case, the statutory scheme in effect at the time of the trial in *Walker* required the prosecution to prove the existence of heat of passion as an element of heat of passion manslaughter, rather than requiring it to disprove heat of passion before there could be a conviction for first or second degree murder. The supreme court rejected the argument that this scheme impermissibly shifted the burden of proof on heat of passion to defendants, in violation of the right to due process.

In sum, we conclude that the various errors asserted by defendant did not, either singly or cumulatively, deprive him of his right to have the jury decide whether he acted in the heat of passion.

### III.

█ Defendant next asserts that the trial court erred in allowing the victim's friend to testify that she believed the victim was afraid of the defendant. We disagree.

Defendant's counsel asked the friend on cross-examination if the victim felt comfortable with defendant. She responded, "I—I don't think she felt comfortable with him." On redirect, the prosecution asked, "Okay. Had the relationship gotten to where [the victim] was scared of Marvin?" The friend responded, "Some—yes."

Defendant objected. The court ruled that the prosecution could explain the friend's response to the defense inquiry regarding whether the victim felt comfortable with defendant, and that the testimony was also admissible under the state of mind exception

to the hearsay rule. The following exchange ensued:

Q. We were talking about you saying that [the victim] felt comfortable with Marvin. Was [the victim] scared of Marvin at the—basically into September of '95?

A. Yes, I—I believe she was, from what I was told, from her.

Q. You were told from her?

A. Yes.

Under CRE 803(3), a statement of a declarant's then existing state of mind is admissible as an exception to the hearsay rule. Defendant concedes that testimony by the friend that the victim had stated that she was afraid of defendant would "perhaps" be admissible under CRE 803(3), but asserts that a different situation is presented here because the friend prefaced her testimony with the words "I believe."

However, a fair reading of this testimony is that the witness was recounting what the victim had said to her, not merely her "belief" as to the victim's fear of the defendant. Moreover, in contrast to *People v. Madson,* 638 P.2d 18 (Colo.1981), on which the defendant relies, the victim's mental state was relevant to the issue of whether defendant had acted in response to a serious and highly provoking act on her part.

█ Additionally, defense counsel opened the door to the testimony when he asked the friend if the victim felt comfortable with defendant. Because defendant raised the issue of the victim's perception of defendant, it was not improper to permit the prosecution to develop that line of questioning further. *See People v. Lesney,* 855 P.2d 1364 (Colo.1993); *People v. Braley,* 879 P.2d 410 (Colo.App. 1994)(once defendant opened door to arguably inadmissible subject, further testimony in clarification was not improperly admitted).

### IV.

Defendant also argues that the trial court erred when it required him to reenact, using a necktie and a white styrofoam head, certain events leading up to the victim's death. We find no error.

■ Because a reenactment of events can be highly persuasive, a trial court must take special care to ensure that the reenactment fairly depicts the events at issue. *U.S. v. Wanoskia*, 800 F.2d 235 (10th Cir.1986).

■ However, the test for admission of reenactments does not require identity, but only substantial similarity, of conditions of the actual event and the reenactment. Minor variances affect weight rather than admissibility. The decision to admit a reenactment is within the sound discretion of the trial court, and will not be reversed absent an abuse of discretion. *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1977).

■ Defendant argues that the reenactment was not substantially similar to the actual event. However, the reenactment was for the limited purpose of demonstrating how the tie was placed around the victim's head and the position of the tie at various times, after defendant had testified regarding the same subjects on direct examination. The demonstration was not done to establish that defendant killed the victim, nor was it an attempt to recreate the entire struggle. The tie used was the same type of tie as that with which the victim had been strangled. The styrofoam head was similar in size to her head.

Given the limited purpose for which the reenactment was offered, it was not an abuse of discretion for the trial court to rule that there was sufficient similarity to allow the reenactment to proceed.

Defendant also contends that the evidence should have been excluded because its probative value was outweighed by the danger of unfair prejudice to him. We conclude that it was within the discretion of the trial court to determine that the probative value of this evidence outweighed its prejudicial effect, particularly in light of defendant's testimony on direct examination regarding the matters that were the subject of the demonstration.

## V.

Finally, defendant contends that the cumulative effect of the errors in his case requires reversal of his conviction. We disagree.

Although we have noted certain errors, we conclude that, taken together, the errors did not deprive defendant of his right to fair trial. *See People v. Botham*, 629 P.2d 589 (Colo.1981).

The judgment is affirmed.

Judge CRISWELL and Judge CASEBOLT, concur.