998 P.2d 362 (2000)
100 Wash.App. 722
STATE of Washington, Respondent,
v.
Mink FIRE, a.k.a. Paul Mrowka, Appellant.
No. 44063-2-I.
Court of Appeals of Washington, Division 1.
May 1, 2000.
Catherine Glinski, James Robert Dixon, Seattle, for Appellant.
*363 Randall Keenan Gaylord, Charles Zachery Silverman, Friday Harbor, Philip James Buri, Bellingham, for Respondent.
KENNEDY, C.J.
Mink Fire appeals his convictions of three counts of first degree child molestation, contending that the trial court erred by refusing to dismiss for cause a potential juror who admitted actual bias, but then responded to the prosecutor's leading questions about being fair and following instructions with one-word affirmative answers. Although appellate courts defer to a trial judge's determinations of a potential juror's credibility, character, mental habits, and demeanor, there is no indication in the record that the trial judge made any such determinations in this case. The trial judge failed to recognize that the prospective juror's initial responses indicated actual bias, focusing instead on his one-word affirmations that he would follow the court's instructions. Fire utilized one of his peremptory challenges to excuse the potential juror and exhausted his remaining peremptories. We conclude that the trial court abused its discretion in failing to excuse the potential juror for cause, and reverse and remand for a new trial.

FACTS
The State charged Mink Fire with three counts of first degree child molestation, alleging that he had sexual contact with two girls who were less than twelve years old. During jury selection, the trial judge asked potential jurors if there was any reason they might have for not sitting on the jury. The juror here at issue raised his hand and responded as follows:
The subject matter in this case. You know, if it was, you know, somebody stealing a car or even someone getting murdered, that's, you know, fine with me. But a case in this nature, you know. I consider him a baby raper, and it should just be severely punished.
I'm very opinionated when it comes to this kind of a crime. I hold innocent  or children from conception on very dear, and they should be protected.
Report of Proceedings (11/3/98) at 75. The prosecutor then asked this juror if his "strong feelings about these types of offenses is such that that would even affect [his] role in making a determination of guilt or innocence[.]" Id. at 76. The juror responded, "That possibility is there." Id. The juror also said that he would "probably give children a higher credibility factor than an adult." Id. at 78. When asked if this was because of the type of case, the juror responded that he simply believed that "children are more innocent, and an adult would be more likely to tell a falsehood." Id. at 79. Next, the prosecutor asked the juror a series of questions about his ability to follow the law:
PROSECUTOR: Do you still accept the fact that the State has to prove the charges beyond any reasonable doubt?
JUROR: Yes, sir.
PROSECUTOR: And you  if you were given instructions on what that means and the other instructions, you would follow the instructions as given to you by the Court?
JUROR: Yes.
PROSECUTOR: But you do have some strong feelings about the case, but you'd still follow the law?
JUROR: Yes.
Id. at 77-78.
Fire challenged this juror for cause, but the trial court refused to excuse him:
[The juror] did not specifically indicate that he thought [Fire] was a baby raper, that anyone that was guilty of that would be, but not necessarily that that was the case. He did indicate that he would still follow the law.
And I think that despite what he may have said, he has indicated that he would be able to follow the law and he would be able to follow the instructions that the Court gives in determining guilt or innocence. So I will not excuse him for cause at this time.
Id. at 81. Fire then used one of his peremptory challenges to excuse the juror, and exhausted *364 the remainder of his peremptory challenges.
The jury found Fire guilty and he appeals.

DISCUSSION

I. Potential Juror
Fire contends that the trial court abused its discretion by refusing to excuse the aforementioned potential juror for cause.
The Sixth Amendment to the U.S. Constitution and article 1, section 22 of the Washington constitution guarantee every criminal defendant "the right to a fair and impartial jury." State v. Brett, 126 Wash.2d 136, 157, 892 P.2d 29 (1995). To ensure this right, a juror will be excused for cause if his or her views would "`prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath.'" State v. Hughes, 106 Wash.2d 176, 181, 721 P.2d 902 (1986) (quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).
"The denial of a challenge to a juror for cause is within the trial court's discretion." State v. Witherspoon, 82 Wash.App. 634, 637, 919 P.2d 99 (1996). We therefore review such a denial for a manifest abuse of discretion. State v. Noltie, 116 Wash.2d 831, 838, 809 P.2d 190 (1991). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 778, 819 P.2d 370 (1991) (quoting State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)). Appellate courts defer to the judgment of the trial judge regarding whether a particular juror is able to be fair and impartial because the trial judge is in the best position to evaluate "the fairness of a juror by the juror's character, mental habits, demeanor under questioning and all other data which may be disclosed by the examination." Noltie, 116 Wash.2d at 839, 809 P.2d 190 (quoting 14 L. ORLAND & K. TEGLAND WASH. PRAC. TRIAL PRACTICE § 203, at 332 (4th ed.1986)).
Nonetheless, if a potential juror demonstrates actual bias, the trial court must excuse that juror for cause. Ottis v. Stevenson-Carson Sch. Dist. 303, 61 Wash.App. 747, 754, 812 P.2d 133 (1991); see also State v. Noltie, 57 Wash.App. 21, 25, 786 P.2d 332 (1990), aff'd, 116 Wash.2d 831, 809 P.2d 190 (1991). Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging[.]" RCW 4.44.170(2). If a trial court fails to excuse for cause a potential juror who demonstrates actual bias, Washington courts have held that the remedy is reversal regardless of whether that juror was ultimately removed by a peremptory challenge. State v. Parnell, 77 Wash.2d 503, 508, 463 P.2d 134 (1969); Ottis, 61 Wash.App. at 755, 812 P.2d 133. This is because "more important than speedy justice is the recognition that every defendant is entitled to a fair trial before 12 unprejudiced and unbiased jurors[,]" and there should be no "lingering doubts" about the fairness of the defendant's trial. Parnell, 77 Wash.2d at 508, 463 P.2d 134. Although the United States Supreme Court has held that a criminal defendant who "exercis[es] a peremptory challenge [to remove a biased juror], and is subsequently convicted by a jury on which no biased juror sat, ... has not been deprived of any rule-based or constitutional right[,]" United States v. Martinez-Salazar, ___ U.S. ___, 120 S.Ct. 774, 777, 145 L.Ed.2d 792 (2000) we are bound by the decisions of the Washington Supreme Court. State v. Hairston, 133 Wash.2d 534, 539, 946 P.2d 397 (1997).
The court found an example of actual bias in Witherspoon, 82 Wash.App. at 634, 919 P.2d 99. In that case, a juror admitted that he was prejudiced against black people who are charged with dealing drugs:
When what you see in the newspaper, I have to admit I'm a little bit prejudiced. I see a lot of black people who are dealing drugs. When drugs are dealt, that's who is involved unfortunately. I can't help it.

*365 I'm sorry. I'm that way. I see it in the papers all the time, and I can't help but be influenced.
Id. at 637-38, 919 P.2d 99. "There were attempts to rehabilitate [this juror], and he ultimately agreed that he would presume Mr. Witherspoon was innocent." Id. at 638, 919 P.2d 99. Notwithstanding this statement, the court held that this potential juror had demonstrated an actual bias because the "very issue on which [this potential juror] was being asked to pass was whether Mr. Witherspoon, an African American, possessed drugs." Id. The court explained that the attempts to rehabilitate this juror did "not go far enough to mitigate a categorical statement by a juror that he was prejudiced against African Americans because of what he has seen and read." Id. Accordingly, the Witherspoon court concluded that the trial court abused its discretion by refusing to excuse this potential juror for cause, and remanded for a new trial.
Here, the challenged juror stated, "I consider him a baby raper, and it should just be severely punished[,]" going on to say, "I'm very opinionated when it comes to this kind of crime." Report of Proceedings (11/3/98) at 75. The potential juror also admitted that it was possible that his strong feelings about this kind of case could affect his determination of guilt or innocence, in light of his belief in the innocence of children and the relative lack of credibility of adults. Although the trial court failed to recognize them as such, these were indications of actual bias. The prosecutor attempted to rehabilitate the potential juror by asking him whether he would follow the court's instructions despite his strong feelings, and the potential juror responded affirmatively in one-word responses. The trial court refused to excuse the challenged juror for cause, focusing on these affirmative responses without recognizing that the potential juror's initial responses demonstrated actual bias.
Just as most potential jurors will not respond affirmatively if asked, "Are you biased?" few will fail to respond affirmatively to a leading question asking whether they can be fair and follow instructions. See LAFAVE ET. AL, CRIMINAL PROCEDURE, § 22.3(c), at 308 (2d ed. 1999) ("[I]t is `unlikely that a prejudiced juror would recognize his [or her] own personal prejudiceor knowing it, would admit it.'") (quoting A. FRIENDLY & R. GOLDFARB, CRIME AND PUBLICITY 103 (1967)).
We do not say that a juror whose initial responses indicate actual bias can never be rehabilitated by affirmative responses to thorough and thoughtful inquiry. We understand that questions asked during jury selection often serve to educate potential jurors with respect to the vital role of the jury in our American system of justice, so that by the end of the selection process some potential jurors who at first thought they might not be able to be impartial may come to understand that they can lay their preconceived notions aside and serve as fair and impartial fact-finders. But appellate deference to trial court determinations of the ability of potential jurors to be fair and impartial is not a rubber stamp. Where a potential juror's initial responses indicate actual bias, an appellate court must be able to ascertain from the record that the trial court's decision not to excuse the potential juror for cause was not based in any way on a misunderstanding of what the potential juror actually said. Here, contrary to the trial judge's perception, the potential juror did not say that anyone found guilty of the crimes with which Fire was charged would be a baby raper. The potential juror actually said, "I consider him a baby raper[.]" Report of Proceedings (11/3/98) at 75. The potential juror also admitted that it was possible that his strong feelings about cases of this kind could affect his determination of guilt or innocence, and that he believed children inherently to be more credible than adults. We find nothing in the potential juror's one-word affirmative responses to the mantra of rehabilitative questions that indicates he had come to understand that he must lay his preconceived notions aside, in order to serve as a fair and impartial juror. Indeed, it is entirely possible that the potential juror may have believed it was possible to retain his preconceived notions and still follow the instructions of the courtmost of which instructions he had not yet heard. On this record, we conclude that the potential juror *366 should have been excused for cause, allowing Fire to reserve one of his 6 peremptory challenges for another use, and demonstrating to the remaining potential jurors the full meaning and importance of the role of jurors as fair and impartial fact-finders.
Reversed and remanded for a new trial.
The remainder of this opinion lacks precedential value and will not be published in the Washington Appellate Reports, but will be filed of public record as provided in RCW 2.06.040.
BAKER, J., concurs.
COX, J. (concurring).
I concur. I write separately to address why the remedy of reversal is required here.
Our Supreme Court has consistently held that a trial court commits prejudicial error where it erroneously refuses a proper challenge for cause and a party then exhausts all of the peremptory challenges to which it is entitled by statute,[1] In McMahon, our Supreme Court explained its rationale for concluding that such an error is prejudicial. Noting that there was both a majority and a minority view on the question, a unanimous court stated:
The rule stated by the majority is that, where the court refuses a challenge for cause, and the party challenging removes the juror by a peremptory challenge and exhausts all his peremptory challenges, while it is error it will not be considered prejudicial unless the record discloses that some juror was kept upon the panel who was not fair and impartial. The theory upon which this rule is based is that twelve jurors having been passed for cause, and nothing being brought out on their examination to tend to show their unfitness as jurors, it must be presumed that they were fair and impartial. But we think that the majority rule entirely overlooks at least one of the purposes of the peremptory challenges allowed by law. If it be conceded that the purpose of the peremptory challenge is merely to allow a juror to be removed when the court has refused to allow him to be excused for cause actually shown, or to remove those who have shown by their answers that they are probably prejudiced or unfair jurors, then the majority rule should govern. However, it seems to us that the right to peremptory challenges is given to enable parties to excuse from the jury those whom they may, for any reason, feel would not make fair jurors even though nothing is disclosed on the voir dire.[2]
In United States v. Martinez-Salazar[3] the Supreme Court stated that the use of peremptory challenges has been subjected to only one substantive control: "Under the Equal Protection Clause, a defendant may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race."[4] The Court went on to hold in Martinez-Salazar that neither the federal rule permitting peremptory challenges nor due process is violated by a party exercising all of its peremptory challenges after being erroneously denied a proper challenge for cause.[5]
The rationale of the Supreme Court appears to be based on the view that the exercise of peremptory challenges after being denied a proper challenge for cause presumably secures to the party the constitutional right to an impartial jury. While this approach is consistent with the "majority" rule discussed in McMahon, it does not address the view based on the broader purpose of peremptory challenges: to allow a party to *367 exclude a potential juror "for which no reason need be given."[6]
There is no question here of the use of the peremptory challenges in violation of the proscriptions stated in Batson v. Kentucky[7] and its progeny. Fire was entitled, by statute and subject to the Batson proscriptions, to exercise all his peremptory challenges whether or not the reason for the challenge was revealed by voir dire. Only then, could he be assured of the constitutional right to an impartial jury. Thus, while there is no due process right violation here, there is prejudicial error.
Accordingly, I concur.
NOTES
[1] State v. Parnell, 77 Wash.2d 503, 463 P.2d 134 (1969); McMahon v. Carlisle-Pennell Lumber Co., 135 Wash. 27, 236 P. 797 (1925) (citing State v. Rutten, 13 Wash. 203, 43 P. 30 (1895); State v. Stentz, 63 L.R.A. 807, 30 Wash. 134, 70 P. 241 (1902); and State v. Moody, 7 Wash. 395, 35 P. 132 (1893)).
[2] McMahon, 135 Wash. at 30, 236 P. 797 (emphasis added).
[3] ___ U.S. ___, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).
[4] Martinez-Salazar, 120 S.Ct. at 781.
[5] Martinez-Salazar, 120 S.Ct. at 782.
[6] RCW 4.44.140.
[7] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).