The PEOPLE of the State of Colorado, Petitioner,

v.

John F. LEFEBRE, Respondent.

Nos. 99SC8 & 99SC42.

Supreme Court of Colorado, En Banc.

June 19, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert M. Russel, First Assistant Attorney General, Peter J. Cannici, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Petitioner.

David Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we must decide whether a trial court erred in excusing several jurors for cause without first allowing voir dire questioning of those jurors by defense counsel. We must also decide whether, if there was error, the defendant's convictions must be reversed as a result.

During jury selection at the trial of John Fred Lefebre for aggravated robbery, several jurors indicated on a written questionnaire that, for various reasons, they could not be fair. The prosecution challenged the jurors for cause, and the trial judge granted the

challenges without allowing defense counsel to question the jurors. The court of appeals determined that the trial judge erred in. so doing because Crim. P. 24 mandates that counsel be allowed to question prospective jurors. *See People v. Lefebre*, 981 P.2d 650, 652 (Colo.App.1998). The court found that the error resulted in prejudice to the defendant, and consequently ordered a new trial. *See id.*

We agree that the trial court abused its discretion in refusing to permit questioning of the challenged jurors by the defendant. The record does not establish firmly and clearly that the jurors could not set aside their preconceived beliefs and decide the case based on the evidence and the court's instructions. Therefore, defense counsel was entitled to question each of these jurors to determine the true nature and extent of their bias. Thus, the trial judge erroneously dismissed the jurors without allowing such questioning.

On the facts of this case, the trial court's error is prejudicial as a matter of law and requires vacating the defendant's convictions. Three jurors were excused as a result of the trial court's decision to grant the prosecution's challenges for cause, and the prosecution declined to use two of its peremptory challenges. As a result, even if the prosecution were to have used its remaining peremptory challenges to strike two of the jurors erroneously removed for cause, the trial court in effect afforded the prosecution an additional peremptory challenge when it removed a third juror for cause. Our prior decisions establish that the resulting imbalance gave the prosecution an unfair tactical advantage in shaping the jury, and, as such, is inherently prejudicial. Accordingly, we affirm the judgment of the court of appeals and order a new trial.

## I.

The prosecution charged John Fred Lefebre with five counts of aggravated robbery

pursuant to section 18–4–302(1)(b), 6 C.R.S. (1999), on the allegation that in June 1996 Lefebre robbed three grocery stores in the Denver area. Lefebre also was charged as an habitual criminal under section 16–13–101, 6 C.R.S. (1999). The trial judge consolidated all of the counts of aggravated robbery for a single trial. The jury convicted Lefebre on four counts of aggravated robbery, deadlocking on the fifth count. As a result, the prosecution dismissed that charge. On the remaining counts, the trial judge sentenced Lefebre as a habitual criminal to sixty-four years on each count.[1]

Lefebre appealed his conviction, claiming that the trial judge committed reversible error during the voir dire process. At the start of the proceedings, the trial judge outlined the charges for the venire, administered the oath, and asked the venire some preliminary questions, such as whether all members were residents, spoke English, and could hear the proceedings. At this point, the judge called twenty-four members of the venire into the box. The judge then considered hardship claims and any claims of personal relationship between the jurors and witnesses or law enforcement personnel. The trial judge next explained some basic principles of law and courtroom procedure.

Prior to these proceedings, the prospective jurors filled out standard questionnaires. Counsel and the court had copies of the completed forms. Question number fifteen asked, "Is there any reason that you believe that you could *not* be a fair juror in this criminal case?"

Before the attorneys began questioning the seated panel, the trial judge asked if the attorneys had any challenges for cause based on the prospective jurors' answers to the questionnaires. The prosecutor challenged three jurors for cause on the grounds that they indicated on their questionnaires that, for various reasons, they did not think they could be fair jurors. Juror Trujillo wrote that he could not be fair because his brother

---

1. The judge ordered that the sentences for the two counts stemming from the incident alleged to have occurred on June 24, 1996 be served concurrently. Similarly, she ordered that the sentences on the two offenses alleged to have occurred on June 27, 1996 be served concurrently. However, the sentences on the June 24 incident and the June 27 incident are consecutive, so that Lefebre would serve a total of 128 years.

had been convicted of the same charges. Juror McClanahan wrote that his prior criminal history would prevent him from being fair. McClanahan did not elaborate further as to his answer nor did he provide additional information in response to a previous question asking if he had been convicted of a crime other than traffic infringements in the last ten years. Juror Greene wrote that he could not be fair because his sister was an expert witness in other cases, and he objected to the manner in which the district attorney's office had treated his sister.

Defense counsel objected to all three challenges and requested an opportunity to question the jurors. The trial judge denied the request, stating that, "[t]he Court of Appeals is basically taking the position that this whole rehabilitation of jurors who indicate that they cannot be fair is an error. As far as I'm concerned if they indicate on these questionnaires they cannot be fair they ought to be excused." The trial court then dismissed all three jurors over defense counsel's objection.

Three replacement jurors were seated in the box, and counsel proceeded to question the jury pool. After the questioning concluded, the trial court ruled on further challenges for cause and both parties exercised their peremptory challenges. The prosecution exercised four peremptory challenges, while the defense exhausted its peremptory challenges, striking six jurors from the panel.

The court of appeals determined that the trial judge erred during the voir dire process by not affording defense counsel an opportunity to question the challenged jurors. *See Lefebre*, 981 P.2d at 652. The court held that the defendant had a statutory right to examine the three prospective jurors. *See id.* Although the trial judge could limit the scope of the questioning, she could not deprive the defendant of the right to question those jurors altogether. *See id.* The court of appeals also found that the record suggested that the jurors could in fact have been rehabilitated. *See id.* at 653. Because the prose-

cution successfully challenged three jurors for cause, and had two unused peremptory strikes, the court presumed prejudice to the defendant. *See id.* Therefore, the court reversed the defendant's convictions and ordered a new trial. *See id.* The prosecution now appeals.[2]

## II.

■ We first must determine whether the trial judge abused its discretion in dismissing the three jurors for cause without allowing defense counsel to question them. We agree with the court of appeals that the trial judge erred, but we approach the problem somewhat differently. We hold that if there is firm and clear evidence that a juror is unfit to serve, then the trial court may properly dismiss the juror without allowing questioning by the parties. Because the record before us does not establish by firm and clear evidence that the jurors at issue were unfit to serve, the trial court abused its discretion in dismissing them prior to questioning by the defense.

## A.

■ Generally, trial courts have considerable discretion in fashioning voir dire. *See People v. Harlan*, 8 P.3d 448, 462 (Colo. 2000). Trial judges have significant leeway in conducting voir dire and in ruling on challenges for cause because the judge is ultimately responsible for providing an impartial panel of jurors. *See People v. Rodriguez*, 914 P.2d 230, 260 (Colo.1996).

■ A trial court must grant a challenge for cause if a prospective juror is unable or unwilling to accept the basic principles of criminal law and to render a fair and impartial verdict based on the evidence admitted at trial and the court's instructions. *See Russo*, 713 P.2d at 360–61; *see also* § 16–10–103(1)(j); Crim. P. 24(b)(1)(X). A reviewing

---

**2.** We granted certiorari on two issues:

  1) Whether the court of appeals erred in concluding that defense counsel must be permitted to rehabilitate prospective jurors under Crim. P. 24(a)(2) where the jurors have stated on questionnaires that they could not be fair.

2) When a trial court prohibits voir dire questioning and dismisses three jurors who stated that they could not be fair, whether a defendant must demonstrate prejudice to establish reversible error.

court ordinarily will overturn a trial court's decision concerning a challenge for cause only upon an affirmative showing that the lower court abused its discretion. *See Carrillo v. People*, 974 P.2d 478, 485 (Colo.1999). We usually accord great deference to the trial court's handling of a challenge for cause because such decisions turn on an assessment of the juror's credibility, demeanor, and sincerity in explaining her state of mind. *See id.* at 485–86; *Russo*, 713 P.2d at 362. The trial court is in a superior position to evaluate these factors than is a reviewing court, which has access only to a cold record for its assessment. *See People v. Davis*, 794 P.2d 159, 206 (Colo.1990). We will, therefore, overturn a trial court's decision to remove a juror for cause without allowing the parties to question the juror, after the trial court has itself questioned the juror, only if there is an affirmative showing in the record that the trial court abused its discretion. *See Carrillo*, 974 P.2d at 485. The jury selection process is designed to produce a fair jury. A defendant has a constitutional right to a fair and impartial jury. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16. Voir dire is an important means by which a defendant's right to an impartial jury and a fair trial is secured. *See Harlan*, 8 P.3d at 462. Voir dire, however, is not itself a constitutional right. *See People v. O'Neill*, 803 P.2d 164, 169 (Colo.1990). Rather, it is a tool that the parties use for the purpose of revealing and addressing bias in potential jurors. *See id.* A biased juror may not serve because he or she could poison the defendant's right to a fair trial. *See People v. Drake*, 748 P.2d 1237, 1243 (Colo.1988).

■ We have recognized that two forms of bias may exist in potential jurors—implied and actual bias. *See People v. Macrander*, 828 P.2d 234, 238 (Colo.1992). Implied bias arises out of external factors, such as a personal relationship between the juror and a participant in the criminal trial. *See People v. Rhodus*, 870 P.2d 470, 475 (Colo.1994). Crim. P. 24(b)(1)(I)-(IX), (XII) and section 16–10–103(1)(a)–(i),(k), 6 C.R.S. (1999), outline the factors that constitute implied bias. These provisions state that the court "shall" dismiss a potential juror when implied bias is present. *See* Crim. P. 24(b)(1); § 16–10–103(1). The trial court must dismiss the juror who falls under any of these provisions in order to maintain the appearance of impartiality in the justice system. See *Carrillo*, 974 P.2d at 486; *Rhodus*, 870 P.2d at 475.

■ In short, implied bias is not rooted in what the juror thinks about matters related to the case, but rather in his or her relationships or circumstances. Therefore, answers to a written questionnaire may disclose enough information, without additional questioning, to warrant dismissal of that juror. Voir dire questioning could also reveal implied bias. However, an impliedly biased juror is not susceptible to rehabilitation through further questioning because implied bias, once established, cannot be ameliorated by the juror's assurances that she nonetheless can be fair.

■ Actual bias, on the other hand, "is a state of mind that prevents a juror from deciding the case impartially and without prejudice to a substantial right of one of the parties." *Macrander*, 828 P.2d at 238. Actual bias encompasses beliefs grounded in personal knowledge or a personal relationship, as well as beliefs grounded in the juror's feelings regarding the race, religion, and ethnic or other group to which the defendant belongs. *See* 5 Wayne R. LaFave, *Criminal Procedure* § 22.3(c) (2d ed.1999). An indication by the juror that he has a biased state of mind can cause the trial judge to excuse that juror. *See Rhodus*, 870 P.2d at 473.[3]

---

3. Crim. P. 24 states that:
   (b)(1) The court shall sustain a challenge for cause on one or more of the following grounds:
   . . .
   (X) The existence of a state of mind in a juror manifesting a bias for or against the defendant, or for or against the prosecution, or the acknowledgement of a previously formed or expressed opinion regarding the guilt or innocence of the defendant shall be grounds for disqualification of the juror, unless the court is satisfied that the juror will render an impartial verdict based solely upon the evidence and the instructions of the court.

■ A potential juror who exhibits actual bias is not, unlike a juror whose bias is implied as a matter of law, automatically disqualified from serving. A prospective juror who makes a statement suggesting actual bias may nonetheless sit on the jury if she agrees to set aside any preconceived notions and make a decision based on the evidence and the court's instructions. *See People v. Fuller,* 791 P.2d 702, 706 (Colo.1990); *see also Drake,* 748 P.2d at 1243; *People v. Abbott,* 690 P.2d 1263, 1266–68 (Colo.1984). Our decisions recognize that a potential juror can sometimes set aside her actual bias because of what the juror learns during the voir dire process about such concepts as burden of proof or presumption of innocence.

■ Crim P. 24 gives attorneys an opportunity to question prospective jurors regarding bias. *See* Crim P. 24(a)(3). The rule in effect at the time of Lefebre's trial stated that, "[t]he judge shall … ask the prospective jurors any questions he believes are pertinent to their qualifications to serve as jurors in the case on trial. The parties or their counsel shall be permitted to ask the prospective jurors additional questions."[4] Crim. P. 24(a)(2) (1996). Although Rule 24(a)(3) provides parties or their counsel with the opportunity to voir dire prospective jurors, the trial judge can limit the extent and the nature of the questioning. *See Rodriguez,* 914 P.2d at 260; *O'Neill,* 803 P.2d at 168–69.

We recognize that the mandatory language of Crim. P. 24(a), which states that parties shall be allowed to voir dire prospective jurors, is in tension with Crim. P. 24(b)(1)(I)-(IX), (XII), which dictates mandatory dismissal of a juror when one of the factors indicating implied bias arises. If the judge must dismiss a juror for implied bias, voir dire need not occur because implied bias

cannot be set aside as can actual bias. Subsection (a) also is in tension with subsection (b)(1)(X), which directs dismissal of a juror for actual bias if the judge is convinced the juror cannot be fair. If a juror gives an unequivocal statement of actual bias that cannot be changed through voir dire questioning, the judge should not be required to delay the selection process with needless questioning.

■ This court must attempt to harmonize different provisions of the Rules of Criminal Procedure. *See People v. Hampton,* 876 P.2d 1236, 1240 (Colo.1994). Therefore, we now hold that, under Crim. P. 24(a), the trial judge ordinarily must permit voir dire of jurors in circumstances that could involve actual bias arising under Crim. P. 24(b)(1)(X). Questioning may be useful in determining whether the prospective juror can set aside her bias and decide the case based on the evidence presented and the court's instructions. The mandatory language of Crim. P. 24(a)(3), therefore, entitles parties or their counsel in most instances to voir dire a potential juror to determine if she is qualified to serve under Crim. P. 24(b)(1)(X).

■ However, the scope of Crim. P. 24(a)(3) is limited by Crim. P. 24(b)(1)(X), and does not entitle parties or counsel to question a prospective juror in certain situations. If there is firm and clear evidence that a potential juror holds an actual bias that is unlikely to change through education concerning the trial process, exposure to basic principles governing criminal trials, or questioning by the court or the parties, then the judge is permitted to excuse that juror without additional questioning. If the juror is unequivocally disqualified under Crim. P. 24(b)(1)(X), we will not require the trial court

Section 16–10–103(1) contains substantially similar language, stating that a court shall sustain a challenge for cause if:

(j) The existence of a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused if the court is satisfied, from the examination of the juror or from other evidence, that

he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
§ 16–10–103, 6 C.R.S. (1999).

4. The rule was amended effective January 1, 1999. The language of the new rule continues to state that "[t]he parties or their counsel shall be permitted to ask the prospective jurors additional questions." Crim. P. 24(a)(3).

to pointlessly devote time to voir dire her.[5] Certainly some questioning, by the court or the parties to explore whether the juror's bias is unshakeable, is preferable, however. We also hold that Crim. P. 24(a)(3) does not apply when any of the factors indicating implied bias under Crim. P. 24(b)(1)(I)-(IX),(XII) is present. Because implied bias cannot be affected by the voir dire process, it would be senseless to allow parties to question a prospective juror who is irremediably disqualified from serving once the implied bias is established by firm and clear evidence.

This construction of Crim. P. 24 harmonizes its various provisions, affords parties or their counsel an appropriate opportunity for voir dire questioning, and at the same time preserves judicial economy and minimizes inconvenience to the jurors.

The case before us involves claims of actual bias and the jurors were excused without questioning from the trial court. Hence, we must determine whether the record contains firm and clear evidence that the jurors' questionnaire answers reflected actual bias that the jurors could not set aside. To that issue we now turn.

### B.

■ We conclude that the record does not contain firm and clear evidence that the jurors removed for cause held actual biases that they could not set aside. We therefore hold that the trial court abused its discretion in removing Jurors Trujillo, McClanahan,

and Greene for cause without allowing defense counsel to question them.

The trial judge granted the prosecution's challenges for cause based on the jurors' answers to a standard, written questionnaire. The questionnaire was designed only to provide basic demographic data, and was not directed specifically at revealing bias. The questionnaire asked the juror's age, occupation, education, and previous experience with the judicial system as a witness, juror, victim of crime, or a criminal defendant.[6] The questionnaire did not contain specific questions relating to aggravated robbery or the facts involved in Lefebre's case, or other more general questions, that would necessarily uncover irremediable actual bias. Moreover, the jurors' answers are summary and lack detail sufficient for us to agree with the trial court that the jurors could not decide the case fairly. We now review each juror's questionnaire responses to explain our holding.

■ Juror Trujillo stated that he could not be fair because his brother had been convicted of the same offense for which Lefebre was on trial. Just as a criminal conviction is not automatic grounds for dismissal, the conviction of a close relative, even on the same charges, does not automatically disqualify a potential juror. *See* § 13–71–105, 5 C.R.S. (1999); § 16–10–103. The judge or counsel should have investigated how recently Trujillo's brother was convicted, and whether that biased him to the extent that he could not serve fairly. It is possible that

---

5. We note that our ruling today effectively overrules part of the court of appeals' holding in *People v. Evans*, 987 P.2d 845 (Colo.App.1998). In that case, the trial judge asked the venire if any of the potential jurors had a moral, religious, or philosophical reason that they believed would prevent them from serving as a juror. *See id.* at 847. After one juror answered that he could not serve based on prior jury experience, the court extensively questioned the juror about his beliefs. *See id.* The juror said that he could not commit to decide the case based solely on the evidence and the law, and therefore, the trial court excused him. The trial judge did not allow questioning by the parties. *See id.* The court of appeals determined that it was error for the trial judge to prevent counsel from questioning the juror before excusing him. *See id.*

The rationale outlined in today's case would compel a different result. When a trial judge extensively questions a potential juror and that juror unequivocally reveals actual bias, the parties need not be afforded an opportunity to continue questioning the juror. As long as the judge sufficiently probed the juror's professed actual bias, the juror may be excused. Directing additional attorney voir dire in such instances would cause unnecessary delay, for both the parties and the other citizens serving in the venire.

6. The questionnaire largely follows the guidelines for jury questionnaires outlined in section 13–71–115, 5 C.R.S. (1999).

Trujillo could have set aside any preconceived notions and served on the panel.

Juror McClanahan indicated that a "prior criminal background" would prevent him from being fair. McClanahan, however, did not answer the question asking if he had been convicted of a crime other than traffic infringements in the last ten years. The judge or counsel should have probed further, possibly inquiring as to whether he had been convicted of any criminal activities, the nature of that activity, and whether his prior experiences would prevent him from fairly hearing the evidence. Although a prior criminal history may lead a party to exercise a peremptory strike on a potential juror, such history does not disqualify a juror from serving, nor is it a statutory ground of dismissal for cause. *See id.* On the whole, the minimal information given by juror McClanahan did not evidence a state of mind that would have prevented him from serving as an impartial juror.

Juror Greene stated he could not be fair because his "sister serves as an expert witness and behavior of DA's staff towards her while I've been present in court room [sic]." This answer likewise was not sufficient to warrant his dismissal. The judge or counsel should have examined whether the proceedings involving Greene's sister took place in the same county, whether the same district attorney was involved, whether Greene's perception of bias stemmed from the right of cross-examination, and whether any animosity he held toward that district attorney extended to all counsel for the state. Greene's statement, standing alone, did not reveal an unchangeable state of mind that would prevent him from serving on a jury. It is possible that after being educated on the trial process he could have agreed to maintain an open mind and decide the case based on the evidence. Thus, the trial judge did not have sufficient evidence to conclude that Greene was unequivocally biased before voir dire questioning began.

The questionnaire answers of these jurors provide some evidence of actual bias that might have prevented them from being qualified to serve on the jury in this case. However, standing alone, the answers are not firm and clear evidence that the jurors could not serve fairly. Consequently, the trial judge should have permitted voir dire questioning to go forward. We thus hold that the trial court abused its discretion in excusing Jurors Trujillo, McClanahan, and Greene for cause without first allowing defense counsel an opportunity to question them.

### III.

We turn now to the question whether the trial court's error prejudiced the defendant. The trial court's decision to remove the jurors for cause in effect granted the prosecution an additional peremptory challenge.[7] As a consequence, while the defendant may have been able to exercise his full complement of peremptory challenges, the prosecution nonetheless enjoyed an unfair tactical advantage over the defendant in shaping the jury. As such, granting the prosecution, on the facts of this case, an unwarranted peremptory challenge is inherently prejudicial to the defendant.

### A.

The function of peremptory challenges in a criminal proceeding is to allow both the prosecution and the defense to secure a more fair and impartial jury by enabling them to remove jurors whom they perceive as biased, even if the jurors are not subject to a challenge for cause. *See Harlan*, 8 P.3d at 459; *People v. Prator*, 856 P.2d 837, 840 (Colo.1993); *Macrander*, 828 P.2d at 242; *see also United States v. Annigoni*, 96 F.3d 1132, 1136 n. 4 (9th Cir.1996) ("Although we decide this case in the context of the rights of the defendant, the peremptory challenge is an equally important tool to insure that the government receives a fair trial.") (citing *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). To

---

7. Depending on the number of its statutorily-allotted peremptory challenges the prosecution elected to use, the trial court's actions could have given the prosecution up to three additional per-emptory challenges. Because, however, the prosecution used four of its six peremptory challenges, the trial effectively granted the prosecution one additional peremptory challenge.

ensure that the parties are equally able to employ peremptory challenges toward this end, section 16–10–104(1), 6 C.R.S. (1999), and Crim. P. 24(d) mandate that they receive the same number of peremptory challenges unless good cause exists to add peremptory challenges to one or both sides. *See* Crim. P. 24(d)(3).[8] A defendant, therefore, must be afforded the same capacity to shape the composition of the jury as that possessed by the prosecution in the exercise of peremptory challenges.

In *Bustamante v. People*, 133 Colo. 497, 500, 297 P.2d 538, 540 (1956), we held that the trial court wrongly granted the prosecution's challenge for cause. The prosecution had already exhausted its statutorily allotted number of peremptory challenges when the challenge for cause was granted. *See id.* This court concluded that erroneously granting the challenge for cause had the effect of affording the prosecution an additional peremptory challenge. *See id.* Thus, the trial court's action was "an abuse of discretion that affected or could have affected the substantial rights of the defendant." *Id.; see also Blades v. DaFoe*, 704 P.2d 317, 321 (Colo.1985) (stating that granting one party an additional peremptory challenge requires reversal of the jury verdict even without a showing of actual prejudice). In so ruling, we did not consider whether the defendant's use of his peremptory challenges was impaired. Indeed, the defendant's ability to exercise peremptory challenges was irrelevant to our analysis. That the prosecution had a relatively greater ability to remove jurors it viewed as objectionable was independently prejudicial to the defendant's rights. For that reason, we ordered a new trial for the defendant. *See Bustamante*, 133 Colo. at 502, 297 P.2d at 541.

### B.

■ *Bustamante* compels the same result in this case. Here, the trial court erroneously granted the prosecution's challenges for cause of three jurors. The prosecution decided not to exercise two of its peremptory challenges. Therefore, even if we assume that the prosecution would have, if the trial court had denied its for cause challenges, used its remaining two peremptory challenges against the jurors at issue, there would have remained one juror the prosecution could not have removed peremptorily. Therefore, as in *Bustamante*, the trial court's decision had the effect of affording the prosecution an additional peremptory challenge. *See Bustamante*, 133 Colo. at 500, 297 P.2d at 540.

■ Affording the prosecution an additional peremptory challenge is inherently prejudicial because "the side with the greater number of peremptory challenges clearly has a tactical advantage because it will have the power to select a jury presumably balanced in its favor by challenging a greater number of jurors." *Blades*, 704 P.2d at 322. This unfair tactical advantage presumptively impairs a defendant's right to equal use of peremptory challenges. Allowing the prosecution what is in effect an additional peremptory challenge creates an imbalance between the capacities of the prosecution and the defendant to remove potential objectionable jurors. In this case, the defendant was able to freely use his full complement of peremptory challenges and the trial court properly ruled on his challenges for cause.[9] However, the trial court amplified the power of the prosecution to shape the composition of the jury by effectively giving it an extra peremptory challenge. Allowing the prosecution to shape a jury predisposed to its position is prejudicial error. *See Ross v. Oklahoma*, 487 U.S. 81, 89, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (stating that a federal due process violation results if a trial court fails to provide a defendant what state law guarantees him). Because the defendant did not receive what he is guaranteed under our prior decisions – parity with the prosecution in the exercise of peremptory challenges – he suffered a Fourteenth Amendment due process violation.

---

**8.** There is no basis in the record for granting the prosecution an additional peremptory challenge under this provision.

**9.** The defendant does not dispute these claims.

Affording the prosecution an unwarranted additional peremptory challenge also undermines the essential purpose of exercising peremptory challenges by either the prosecution or the defense. "Peremptory challenges serve to 'eliminate extremes of partiality on both sides' and 'to assure parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them and not otherwise.'" *Prator*, 856 P.2d at 840 (quoting *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964)). Allowing the prosecution in this case to craft a jury predisposed toward its position by removing more jurors than the defendant was able to remove hardly achieves this critical purpose.

If a trial court allowed a defendant full use of her complement of peremptory challenges and correctly ruled on each of her challenges for cause, but without good cause overtly granted the prosecution an additional peremptory challenge, clearly we would find the trial court's actions to constitute reversible error. The present case differs from that scenario only in the means by which the prosecution was afforded its extra peremptory challenge. Whether the additional peremptory challenge fell into the prosecution's hands because the trial court overtly granted it or because the trial court erroneously removed for cause one more juror than the prosecution had remaining peremptory challenges, the prejudicial effect is identical.

### IV.

■ The prosecution argues that Lefebre is entitled to a new trial only if the trial court's actions resulted in a biased jury. The United States Supreme Court has recently analyzed a related issue in *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). We conclude that the case before us presents no legitimate basis for wholesale departure from the line of cases in which we have presumed prejudice if the trial court improperly impairs or increases a party's capacity to use peremptory challenges to shape the ultimate composition of the jury.

### A.

Because *Martinez–Salazar* merely applies the doctrine set forth in *Ross* to a federal law context, *see Martinez–Salazar*, 120 S.Ct. at 780, we begin with a discussion of *Ross*.

### 1.

In *Ross*, the defendant was charged with capital murder. *See Ross*, 487 U.S. at 83, 108 S.Ct. 2273. During voir dire a juror indicated that he would automatically impose a death sentence upon the defendant if he were convicted. *See id.* at 83–84, 108 S.Ct. 2273. Defense counsel therefore challenged the juror for cause, but the trial court denied counsel's motion. *See id.* at 84, 108 S.Ct. 2273. Ross eventually used his sixth peremptory challenge to remove the juror and eventually exhausted all his peremptory challenges. *See id.* None of the jurors who sat on Ross' jury were challenged for cause by defense counsel. *See id.* The jury found the defendant guilty and sentenced him to death. *See id.*

The Oklahoma Court of Criminal Appeals upheld the defendant's conviction and sentence on the grounds that the jury was fair. *See id.* The Supreme Court granted certiorari to determine whether "the trial court's failure to remove [the challenged juror] for cause and [Ross'] subsequent use of a peremptory challenge to strike [the juror]" violated the defendant's Sixth or Fourteenth Amendment rights. *Id.* at 85, 108 S.Ct. 2273.

The Court first considered whether Ross' Sixth and Fourteenth Amendment right to an impartial jury was violated by the trial court's action. *See id.* at 85, 108 S.Ct. 2273. The defendant suffered no impairment of this right because the jury ultimately seated was fair. *See id.* at 85–86, 108 S.Ct. 2273. If the juror at issue had been seated, then the defendant would have been entitled to a new trial because the juror was incompetent to serve. *See id.* at 85, 108 S.Ct. 2273. However, the defendant removed the juror through use of a peremptory challenge. Therefore, the defendant suffered no impairment of his right to a fair trial. *See id.* at 86, 108 S.Ct. 2273.

The Court then considered whether Ross' Fourteenth Amendment right to due process was violated. *See id.* at 88–89, 108 S.Ct. 2273. The defendant argued that the trial court's erroneous denial of his challenge for cause forced him to use a peremptory challenge to remove the juror, thereby depriving him of his right to full use of peremptory challenges. *See id.* at 89, 108 S.Ct. 2273.

The Court rejected the proposition that loss of a peremptory challenge is itself sufficient under the federal Constitution to warrant reversal of the defendant's conviction. Peremptory challenges "are a creature of statute and not required by the Constitution." *Id.* at 89, 108 S.Ct. 2273. Therefore, "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Id.* Consequently, a defendant suffers a due process violation only if he does not receive that which state law provides. *See id.*

Under Oklahoma law, a defendant must use his allotment of peremptory challenges to cure the trial court's errors in excusing jurors for cause. *See id.* at 90, 108 S.Ct. 2273. Moreover, a defendant has not suffered a due process violation unless he exhausts his peremptory challenges, and is unable to challenge an incompetent juror who, as a result, sits on the jury. *See id.* at 89, 108 S.Ct. 2273. Because Ross used a peremptory challenge to cure the trial court's error, and thus no incompetent juror sat on the jury, the defendant received the benefit to which he was entitled under state law. *See id.* at 91, 108 S.Ct. 2273. Therefore, no violation of his Fourteenth Amendment due process right occurred. *See id.*

### 2.

In *Martinez–Salazar*, the Court returned to a question left open in *Ross:* whether, if, unlike the defendant in *Ross,* a defendant is not required to use peremptory challenges curatively, he suffers an impairment of his right to exercise peremptory challenges when he removes a juror the trial court erroneously failed to excuse for cause. *See Martinez–Salazar*, 120 S.Ct. at 782; *see also Ross*, 487 U.S. at 90 n. 4, 108 S.Ct. 2273.

The Court held that a defendant's Fifth Amendment due process right is not violated in these circumstances. *See Martinez–Salazar*, 120 S.Ct. at 782.

In *Martinez–Salazar*, the defendant was accused of various drug-related offenses. *See id.* at 777. In accordance with Fed. R.Crim. Pro. 24(b)-(c), he and his co-defendant were jointly allotted eleven peremptory challenges, while the prosecution received seven. *See id.* & 779 n. 2. Martinez–Salazar challenged a juror for cause on the basis of his written questionnaire answers and his voir dire statements. *See id.* at 778. The trial court denied the challenge and Martinez–Salazar ultimately struck the juror with a peremptory challenge. The defendants ultimately used all eleven peremptory challenges. *See id.* However, the defendants did not request, as they are entitled to do under Rule 24(b), an additional peremptory challenge. *See id.; see also id.* at 783 (Souter, J., conc.).

Martinez–Salazar appealed his convictions to the United States Court of Appeals for the Ninth Circuit. *See id.* The court of appeals held that the defendant did not suffer a deprivation of Sixth Amendment right to an impartial jury because he did not allege that any of the seated jurors were incompetent. *See id.* However, the court reversed the defendant's convictions on the basis of the Fifth Amendment due process guarantee. *See id.* The trial court's error in denying the defendant's challenge for cause forced him to use a peremptory challenge curatively, which is not required under Rule 24. *See id.* Therefore, his right under federal law to his full complement of peremptory challenges was impaired. *See id.*

The Supreme Court granted certiorari to determine whether a defendant's right to peremptory challenges is impaired when the trial court erroneously denies his challenge for cause and the defendant exhausts his peremptory challenges. The Court reversed the Ninth Circuit's judgment, holding that the defendant suffers no infringement of his Fifth Amendment due process right under this scenario. *See id.* at 779.

The Court began its analysis by reaffirming its view that peremptory challenges are not a right under the federal constitution. *See id.* However, the Court also stressed the critical role that peremptory challenges play in "reinforcing a defendant's right to trial by an impartial jury," something the Court has "long recognized." *Id.*

The Court then applied its reasoning in *Ross* to the scenario before it, observing that the salient difference between *Ross* and the case before it was that *Ross* "arose in a state-law setting" whereas *Martinez–Salazar* was a federal-law case. *See id.* at 780.

First, the Court rejected the position that, "without more, 'the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.'" *Id.* (quoting *Ross*, 487 U.S. at 88, 108 S.Ct. 2273). If the jury was impartial, the fact that the defendant used a peremptory challenge "to achieve that result does not mean that the Sixth Amendment was violated." *Id.* (internal quotation marks and citation omitted). Therefore, the Court agreed with the Ninth Circuit that Martinez–Salazar did not suffer a violation of his Sixth Amendment right to an impartial jury. *See id.*

The Court then addressed the defendant's Fifth Amendment due process claim. The Court identified as the central premise of the Ninth Circuit's argument the proposition that the trial court's erroneous denial of the defendant's challenge for cause forced the defendant to exercise a peremptory challenge to remove the juror. *See id.* at 781. As a result, according to the court of appeals, "Rule 24(b) was violated because Martinez–Salazar could effectively exercise only 9 [sic] of the 10 [sic] initial peremptory challenges for which the Rule provided." *Id.* The court of appeals thus concluded that "due process is violated when a defendant is forced to exercise a peremptory challenge to cure an erroneous for-cause refusal." *Id.*

(internal quotation marks and citation omitted).

The Court rejected this argument, holding that Rule 24 entitles a defendant only to a specified number of peremptory challenges. *See id.* at 781. The defendant received the total number of challenges which he was guaranteed under Rule 24(b); therefore, he received all to which he was entitled under the Rule. *See id.* Additionally, Martinez–Salazar did not request any additional peremptory challenges, as is his right under Rule 24(b). After the trial court erroneously denied Martinez–Salazar's challenge for cause, the defendant removed the juror by using one of his peremptory strikes. Consequently, the defendant did not suffer a deprivation of his Fifth Amendment due process right. *See id.* at 782.

### B.

■ Both *Ross* and *Martinez–Salazar* set forth narrow holdings that have little application to the case before us. The cases stand for the proposition that the Fifth, Sixth, and Fourteenth Amendments are not violated when a defendant bears the burden of removing a juror through exercise of a peremptory challenge whom the trial court should have removed for cause. *See Martinez–Salazar*, 120 S.Ct. at 782; *Ross*, 487 U.S. at 88, 90–91, 108 S.Ct. 2273. However, as *Ross*, 487 U.S. at 89, 108 S.Ct. 2273, states, a defendant does suffer a Fourteenth Amendment due process violation if the trial court's actions deprive him of that to which he is entitled by state law regarding use of peremptory challenges.[10] Our decisions have consistently recognized that, under Colorado law, a defendant suffers reversible prejudice if he is forced to use a peremptory challenge to remove a juror whom the trial court failed to remove for cause and he exhausts his peremptory challenges.[11] *See Harlan*, 8

---

**10.** *Martinez–Salazar* is implicitly consistent with this proposition because the case involved only matters of federal law.

**11.** Because Martinez–Salazar did not seek additional peremptory challenges under Rule 24(b), in effect he did not exhaust the complement of peremptory challenges as guaranteed to him under federal law. *See Martinez–Salazar*, 120 S.Ct.

at 778; *id.* at 783 (Souter, J., conc.). The Court's analysis therefore has little bearing on a situation in which a defendant does exhaust full complement of peremptory challenges.

In contrast, this court does not require a defendant to request an additional peremptory challenge after he uses one to cure a trial court's

P.3d at 459; *Prator,* 856 P.2d at 840–42; *Macrander,* 828 P.2d at 242–44 & 244 n. 12. That federal law governing the use of peremptory challenges differs from Colorado law governing the use of peremptory challenges does not alter the effect of *Ross* when applied to Colorado law. *See also State v. Huerta,* 175 Ariz. 262, 855 P.2d 776, 779 (1993) (relying on state-law procedural grounds to reverse conviction); *Thomas v. Commonwealth,* 864 S.W.2d 252, 260 (Ky. 1993) (holding that state law creates a due process right to full use of peremptory challenges); *State v. Fire,* 100 Wash.App. 722, 998 P.2d 362, 363 (2000) (declining to follow *Martinez–Salazar* on state-law grounds); *State v. Vreen,* 99 Wash.App. 662, 994 P.2d 905, 909 (2000) (same); *State v. Ramos,* 211 Wis.2d 12, 564 N.W.2d 328, 333 (1997) (stating that reversal is required even if a defendant's federal constitutional right to a fair jury is not violated if his statute-based right to full use of peremptory challenges is abridged).

Moreover, *Ross* and *Martinez–Salazar* focus only on whether a defendant's federal constitutional rights are violated simply because he removes a juror with a peremptory challenge when this juror should have been removed for cause. *See Ross,* 487 U.S. at 83, 108 S.Ct. 2273; *Martinez–Salazar,* 120 S.Ct. at 777. The case before us presents a different factual scenario. We are not called upon to decide whether the defendant's right to full use of his peremptory challenges is impaired if he uses a peremptory challenge on a juror whom he challenged for cause but the trial court erroneously failed to remove.[12] Instead, we must determine if enlarging the prosecution's capacity to shape the composition of the jury by giving the prosecution

effectively more peremptory challenges than a defendant permits it to select a jury more predisposed to its view and thus violates a defendant's substantial rights.

*Ross* and *Martinez–Salazar* are entirely silent on this logically distinct issue. Those cases therefore provide little guidance in resolving the question before us and present no compelling reason to overturn *Bustamante* and related cases.[13]

■ Consequently, we affirm our decision in *Bustamante* and hold that when the trial court erroneously grants the prosecution's challenge for cause, and this decision has the effect of giving the prosecution an additional peremptory challenge, the error is inherently prejudicial to the defendant.

### V.

We agree with the court of appeals that the trial court erroneously granted the prosecution's challenges for cause. The trial court's decision had the effect of affording the prosecution an additional peremptory challenge. We hold that this error is inherently prejudicial because it allowed the prosecution an unfair tactical advantage in shaping a jury biased in its favor. Accordingly, we affirm the judgment of the court of appeals and remand the case for a new trial.

Justice KOURLIS dissents.

Justice RICE and Justice COATS do not participate.

Justice KOURLIS, dissenting:

Even if the trial judge should have permitted some questioning of the three challenged jurors prior to excusing them, I cannot agree

---

erroneous denial of his challenge for cause. *See Prator,* 856 P.2d at 843.

**12.** Our decisions in *Harlan,* 8 P.3d at 459; *Prator,* 856 P.2d at 840–42; *Macrander,* 828 P.2d at 242–44, conclusively demonstrate that the defendant is thereby prejudiced.

**13.** In addition, *Martinez–Salazar* contains an important factual difference from the case before us. The defendant in *Martinez–Salazar* was guaranteed by Rule 24(b) 11 peremptory challenges while the prosecution was entitled only to

7. *See Martinez–Salazar,* 120 S.Ct. at 779 n. 2. In contrast, Crim. R. 24(d) requires that, unless good cause is shown, both the prosecution and defense receive the same number of peremptory challenges. Colorado law, therefore, normally entitles both parties to parity with one another in their respective ability to use peremptory to shape the ultimate composition of the jury. Federal law does not require similar parity in some kinds of cases. *See* Fed.R.Crim.P. 24. Therefore, *Martinez–Salazar* becomes even less relevant to resolving the precise question the case before us presents.

that the error caused any prejudice to the defendant and I, therefore, respectfully dissent. The defendant has made no showing that the ultimate panel included individuals who were unable to be fair; rather, he argues that his opportunity to exercise his peremptory challenges in a tactically advantageous manner was abridged. In my view, that is not enough to warrant reversal.

Generally, a trial court's error in granting or denying a challenge for cause results in the reversal of a defendant's conviction only if the error affected the defendant's substantial rights. *See People v. Vigil*, 718 P.2d 496, 500 (Colo.1986). If the error does not compromise defendant's constitutional rights, then the defendant must demonstrate prejudice in order to be entitled to a new trial. *See id.* Because Lefebre had no constitutional entitlement to voir dire the panel, *see* maj. op. at 299–300, he has the burden to demonstrate that the judge's dismissal of the three prospective jurors prejudiced him.

In the past, this court has presumed prejudice to result when the trial judge erred in *denying* a challenge for cause, thereby leaving an objectionable juror on the panel, and the complaining party used a peremptory strike to remove that objectionable juror. *See People v. Prator*, 856 P.2d 837, 842 (Colo. 1993); *People v. Macrander*, 828 P.2d 234, 244 (Colo.1992).[1] We have observed that in such situations the trial judge's error effectively granted the defendant fewer peremptory challenges, and as a result, impaired

"the defendant's ability to change the ultimate composition of the jury selected to try the case." *Macrander*, 828 P.2d at 244. We held that the defendant need not demonstrate that another juror who was seated on the panel was biased. *See id.* at 245–46.

In a 1956 case, we applied the same standard in a situation where the trial judge erroneously *granted* a challenge for cause. *See Bustamante v. People*, 133 Colo. 497, 500, 297 P.2d 538, 540 (1956). In *Bustamante*, the trial judge improperly excused a juror after the juror was challenged for cause by the prosecution. *See id.* Because the prosecution exhausted its peremptory challenges, this court held that the erroneous grant of the challenge effectively gave the prosecution an additional peremptory strike, and thus, we found reversible error. *See id.*

In reaching the same conclusion here, the majority follows *Bustamante*, and I would not. Rather, I view a recent pronouncement by the United States Supreme Court to have significantly altered the landscape in this area of jurisprudence. *See United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). In *Martinez–Salazar*, the trial judge erroneously denied the defendant's challenge of a prospective juror for actual bias. Therefore, a juror who had demonstrated some bias was left on the panel. *See* 120 S.Ct. at 778. The defendant used a peremptory challenge to remove the objectionable juror, and subsequently exhausted all other peremptory strikes.[2] *See*

---

1. These holdings were restated in dicta in *Harlan*, 8 P.3d at 459. In *Harlan*, this court upheld the trial judge's rulings on the defendant's challenges for cause, and thus, was not required to reach the issue of prejudice. *See id.* at 462. Because the issue was not squarely presented in that case, the statements reiterating that a presumption of prejudice arises when a defendant's use of peremptory challenges is impacted should not be binding on today's holding.

In addition, *Harlan* presented a unique situation because the alleged errors arose in the context of a death penalty case. As this court stated, a higher level of scrutiny is appropriate in capital cases. *See id.* at 461. In capital cases, it is especially vital that jurors come to the trial with an open mind. Therefore, it may be appropriate in capital cases to continue to follow the rule of *Macrander* and presume prejudice when a defendant's use of his peremptory strikes is impacted by an error on a challenge for cause.

2. The majority finds it significant that Martinez–Salazar did not request additional peremptory challenges, stating that therefore, the defendant did not actually exhaust his peremptory challenges. *See* maj. op. at 306, 307, 308 n. 11. The majority thus distinguishes *Martinez–Salazar* from cases such as the one before the court today where the defendant does exhaust his full complement of peremptory challenges. *See* maj. op. at 307 n. 11.

Martinez–Salazar was permitted to request extra peremptory challenges only because the case involved multiple defendants. *See* Fed.R.Crim.P. 24(b). Martinez–Salazar, was not entitled to receive any additional strikes, however, as a trial judge has broad discretion in granting or denying requests for additional peremptory challenges. *See United States v. Meredith*, 824 F.2d 1418, 1423 (4th Cir.1987). In such situations,

*id.* The Ninth Circuit Court of Appeals held that the mistake resulted in a violation of the defendant's due process rights because the defendant was forced to use a peremptory challenge to cure the trial judge's error, and thus, he did not have his full complement of discretionary peremptory challenges. *See id.*

The Supreme Court unanimously reversed the Ninth Circuit, holding that the trial judge's error did not deny the defendant either his statutory right to peremptory challenges or his due process rights under the Fifth Amendment. *See id.* at 781. The defendant received the exact number of peremptory strikes to which he was entitled under federal law, and the defendant exercised every one of those strikes. *See id.* The Court concluded that Fed.R.Crim.P. 24 does not require that a party use a peremptory challenge curatively. *See id.* at 781. The fact that the defendant used one of the strikes to remove the objectionable juror was a tactical choice made by the defendant, not a choice coerced by the error. *See id.*[3] As the Court observed, "[a] hard choice is not the same as no choice." *Id.* "In choosing to remove [the juror] rather than taking his chances on appeal, Martinez–Salazar did not lose a peremptory challenge." *Id.* at 781–82. Rather, he used the challenge for its principal purpose—to remove a disfavored juror, and thus, secure the constitutional guarantee of trial by an impartial jury. *See id.* at 782.

The Supreme Court ultimately concluded that the error by the trial court did not require reversal. *See id.* In so holding, the Court noted that the trial judge's error did not result in a juror serving on the panel who should have been dismissed for cause. *See id.*[4]

The manner in which the Supreme Court discusses the *Martinez–Salazar* issue refocuses the critical inquiry in this area of the law. The Court concludes that the question of prejudice should turn on whether the seated panel was fair, not whether a party had free reign over the tactical use of its peremptory strikes. The Court's statements, therefore, reject our earlier holdings in *Macrander, Prator,* and *Bustamante* that an error on a ruling for cause presumptively prejudices a party by giving the opposing party a tactical advantage in the use of its peremptory strikes. The right that is constitutionally protected is the right to an impartial jury. Peremptory challenges are a tool designed to assure that goal, but the interference with peremptory challenges, without more, does not automatically cause prejudice.

*Martinez–Salazar* presents the more common factual scenario—a defendant used one or more peremptory challenges to correct a trial judge's error in *denying* a challenge for cause. The Court's reasoning applies with even greater force, however, in cases such as *Bustamante* and the one before us today, where the trial judge erroneously *granted* a challenge for cause. *See* 133 Colo. at 500, 297 P.2d at 540. In such a case, the trial judge dismissed the questionable jurors and they posed no further risk of prejudice. The judge's decision did not force the defendant to make a strategic choice between striking the objectionable juror and some other juror. Once the parties passed the panel for cause, the defendant was free to apply each of his

any award of additional challenges is often conditioned on the award of additional challenges to the prosecution. *See United States v. Bruno,* 873 F.2d 555, 561 (2d Cir.1989). Therefore, it is not at all clear that Martinez–Salazar failed to exhaust his strikes. It is equally probable that the defendant did exhaust his strikes, as Lefebre did in this case.

Justice Souter's concurrence does not suggest that Martinez–Salazar failed to exhaust his challenges. *See* 120 S.Ct. at 783. Rather, Justice Souter only points out that the Court's opinion does not cover cases in which a defendant requests an additional strike for the express purpose of removing another biased juror. *See id.*

It also should be pointed out that Lefebre could have requested additional peremptory

strikes as Rule 24(d)(3) of the Colorado Rules of Criminal Procedure allows a trial judge to grant additional challenges upon a showing of good cause. Therefore, the facts of *Martinez–Salazar* are fully applicable to the case at hand.

3. The Supreme Court noted that a different result would be compelled had the trial court deliberately misapplied the law in order to force the defendant to use a peremptory challenge to correct the court's error. *See Martinez–Salazar,* 120 S.Ct. at 782.

4. As the Supreme Court pointed out, if a biased juror had been seated erroneously, the result would be different. *See Martinez–Salazar,* 120 S.Ct. at 782.

peremptory strikes to remove a disfavored juror. The only result of the trial judge's error is that a different panel of presumably nonobjectionable jurors served. Although the improperly excused jurors might have served fairly, it defies common sense to presume prejudice in such situations.

Applying the Supreme Court's reasoning to the facts of this case, I would find that the trial judge's errors in excusing jurors Trujillo, McClanahan, and Greene do not amount to reversible error requiring a new trial for Lefebre. Although the errors may have allowed the prosecution to strike three extra jurors from the panel, rather than using its peremptory challenges on these jurors, each side had their full six complement of peremptory challenges to use as they saw fit. *See* Crim. P. 24(d). There is no evidence in the record, and the defendant has made no claim, that the jurors who ultimately served were biased. In fact, the defendant approved the panel at the end of the voir dire process, demonstrating his apparent satisfaction with the panel.[5]

Accordingly, since I would reverse the court of appeals and affirm the trial court, I respectfully dissent.

5.  Whether passing a panel for cause constitutes a waiver of previously asserted challenge for cause is an issue that the parties have not preserved for review, and that we do not address in this case.